WILLIAM HANSON *vs*. JOHN BARNES' LESSEE.—*December*, 1831.

It is a general principle, that where a new person is to be benefitted, or charged by the execution of a judgment, there ought to be a *scire facias* to make him a party ; but this principle does not apply to a case, where the new party becomes interested after the process is in the hands of the officer for execution.

The death of a defendant before a levy on a *fi. fa.*, in the hands of the sheriff prior to such death, does not render a *sci. fa.* against the heirs and *terre tenants* necessary ; the sale under a *fi. fa.* thus issued and levied, passes title to the purchaser.

The writ of *fi. fa.* requires no order or action of the court, to give the plaintiff the fruits of his execution. These are reaped when the sheriff discharges his duty under the process.

Judicial writs do not in general abate by the death of the party.

Since the statute of 5 *Geo.* 2, *chap.* 7, lands have not been considered as a secondary fund in the hands of the debtor for the payment of debts ; but they are equally liable with his personalty. The judgment creditor may, at his election, seize either, unless under peculiar circumstances of equity, he shall be restrained from exercising his election to the prejudice of an alienee, devisee, or heir.

After the death of a debtor, lands are only secondarily liable, but this must be taken with the qualification, that prior to his death, they had not become liable to be affected by an execution.

Parol evidence is admissible to establish the date of the delivery of an execution to the sheriff, where no endorsation of the time was made on the writ, as the statute demands of that officer.

Neither an endorsation of the time of the delivery of a writ of *fi. fa.* to the sheriff, nor evidence of that fact, is necessary in making title to lands purchased under that writ—Nor is it necessary as to personal property, except as against purchasers.

The lien upon lands is from the rendition of the judgment, and the right to execution of lands in the tenure of the heir, grows out of the statute 5 *Geo.* 2, *ch.* 7, in connexion with that lien.

If a sheriff's sale under a *fi. fa.* can be impeached, upon the ground of due notice of the sale not being given, that fact must appear affirmatively—for every thing is to be presumed in favor of the performance of his duties.

A sheriff's return to a *fi. fa.* which reports a sale of lands, or his deed to the purchaser under the execution, is a sufficient memorandum in writing within the statute of frauds. It is not necessary that the return should be endorsed on the writ, or the deed executed at the time of the sale.

APPEAL from *Charles* County Court.

*Ejectment* by the appellee, against the appellant, commenced on the 6th of March, 1826, for two tracts of land, called "*Posey's Chance*," and "*Hopewell's Addition*."

1. At the trial the plaintiff read in evidence a writ of *fieri facias*, issued upon a judgment rendered at March term, 1824, at the suit of the *State of Maryland*, for the use of the plaintiff, against *Samuel Hanson*. The writ issued on the 28th of August, 1824, tested the day preceding, and was returnable to the then ensuing March term of *Charles* County Court, and the sheriff's return as follows: "Laid as per schedule, and after due and legal notice being given, of the time and place of sale, the negroes mentioned in the within schedule, sold for $415—$214 39, applied towards *fi. fa.* No. 1.—$15 97½ applied towards *fi. fa.* No. 2, and the residue being $8 89½, retained for sheriff's fees on ditto, $174 63—the balance being $165 73, applied towards the discharge of this *fi. fa.* The lands contained in the schedule, sold to plaintiff for $277—$4 15 retained for sheriff's fees on ditto, and the residue being $272 84, applied towards the discharge of this *fi. fa.* per receipt. *Alex. Matthews, Sheriff.*" Schedule accompanying the foregoing return. *Charles* County, to wit:—We, the subscribers, being duly summoned and sworn by the sheriff of *Charles* county, to value and appraise the goods and chattels, lands and tenements of *Samuel Hanson, Sr.* taken by virtue of a writ of *fieri facias*, at the suit of the *State of Maryland* use of *John Barnes*, do value and appraise the same in current money as follows, to wit: all of said *Samuel Hanson, Sr's* right, title, claim and interest, whether in law or equity, of, in and into the following tracts, parts of tracts, or parcels of land, lying and being in *Charles* County aforesaid, called or known by the following names, to wit: *Posey's Chance*, containing 100 acres, more or less, $4 per acre—*Pt. Hopewell's Addition*, containing 44 acres, more or less, at $4 per acre—*Brawner's Chance*, containing 50 acres, more or less, at $4 per acre;

and *Pt. Gonier's Choice*, containing 100 acres, more or less, $4 per acre—Also the following personal property, to wit, &c. Given under our hands and seals the 9th day of October, 1824."—On the back of the foregoing schedule is thus endorsed, to wit: "January 8th, 1825, the within land sold to *John Barnes* for $277 00." Receipt accompanying the foregoing return—"Received, June 13th, 1825, from *A. Matthews*, Esq. $786 35, in full for money due me on the within writ.—*J. Barnes.*" He also offered in evidence, a deed from the said sheriff to the lessor of the plaintiff, for the lands in the schedule contained, executed, acknowledged and recorded on the 6th of March, 1826; and proved, that Doctor *Samuel Hanson* died in possession of the said lands, and of considerable personal property. That the defendant in this cause, was one of his heirs and representatives. It was further proved by the then sheriff, *Alexander Matthews*, that the said *fieri facias* was delivered to him at nine o'clock on the 28th of August, 1824, and that Doctor *Hanson* died on the 1st of September following. That the court of *Charles* County was in session at the time of issuing the said *fieri facias*, which session commenced the —— day of August of said year, and ended on the 3d of September. Thereupon the defendant prayed the opinion of the court, and their instructions to the jury. 1st. That the plaintiff was not entitled to recover, without producing in evidence a grant from the State, and deducing the title of the debtor in said *fieri facias* mentioned. 2d. That as the said *fieri facias* was tested on the 27th day of August, 1824, when the court was in session, as before stated, and without the special order of said court, that it issued irregularly, and that the proceedings under it were void against the present defendant. 3d. That as Dr. *Hanson* died on the 1st of September, and the said *fieri facias* was not levied until the 9th of October; that the issuing of said *fieri facias*, and delivery to the sheriff as stated, did not bind the lands of the debtor, which had descended to the heir. 4th. That although the issuing and

delivery of said *fieri facias* as stated, might bind the land upon a deficiency of personal property, yet if the jury should believe, that there was a sufficiency of personal property to satisfy the same, that such personal property should first have been taken under said *fieri facias*—all which opinions the court refused to give. The defendant then offered in evidence the following advertisement, to wit: "*Sheriff's Sale*—By virtue of three writs of *fieri facias* to me directed, from *Charles* County Court, will be exposed to public sale, for ready cash, at the *Trap*, on the 8th of January next, the following property, to wit: all of *Samuel Hanson, Sr's* right, title, claim and interest in law or equity, of, in, and to the following tracts, parts of tracts, or parcels of land, lying and being in *Charles* County, *Durham Parish*, called and known by the following names, to wit: *Perry's Chance*, containing 100 acres, more or less—*Pt. Hopewell's Addition*, containing 44 acres, more or less— *Brawner's Chance*, containing 54 acres, more or less; and *Pt. Gonier's Choice*, containing 100 acres, more or less— and also the following personal property, &c. The whole taken in execution as the property of *Samuel Hanson, Sr.*, and will be sold to satisfy the following debts, to wit: one due to the *State of Maryland*, use *John Barnes;* one due to *William Bruce*, and one due to *Ignatius Semmes. Alex. Matthews*, Sheriff—*Charles* County, December 6th, 1824." And proved by *Noble Barnes*, that he as deputy sheriff, levied the *fieri facias* and made sale of the land; that this advertisement was in his hand writing, and was an original advertisement giving notice of said sale, and that the land in question was sold on the day mentioned in said advertisement. That the said *Noble Barnes* did not make any written entry or other memorandum of said sale; that he acted as auctioneer at the said sale, but the high sheriff was present and attended to the sale. The defendant then prayed the opinion of the court, that unless the plaintiff proved to the jury, that there was some entry or memorandum in writing of the sale, that the sale was void—which

opinion the court refused to give—But directed the jury
that the return of the sheriff on the *fieri facias*, and deed
to the purchaser, the present plaintiff, was a sufficient me-
morandum in writing, and could not be rebutted, but by
proof of fraud and collusion between the sheriff and the
purchaser.   The defendant then offered in evidence the en-
dorsement of the *fieri facias*, and return thereof, which was
interlined and written with ink of different colors, and pray-
ed the opinion of the court, that if the jury should believe
that said endorsement and return was made *post litem mo-
tem* in this cause, it was competent evidence of fraud and
collusion to go to the jury—which opinion the court also re-
fused to give.   The defendant then lastly prayed the opinion
of the court, that if the jury should believe, that due and
legal notice of the sale of the tract of land called *Posey's
Chance*, as required by the act of assembly, was not made,
that then the title of said tract did not vest in the purshaser
by said sale, and for said tract the plaintiff was not entitled
to recover—which opinion the court refused to give.

The defendant excepted to all these refusals of the court,
to grant his prayers, and the verdict and judgment being
for the plaintiff, he prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., EARLE,
ARCHER, and DORSEY, J.

*Brawner*, for the appellant, contended,

1. That as *Samuel Hanson* died before execution ac-
tually executed, the lands in the possession of his heir,
could not be taken in satisfaction of the judgment against
the father, until upon a suggestion and proof of deficien-
cy of personal assets.  *Jacobs' Law Dic. tit. Exec.* 495.  2.
That a *fieri facias* binds goods and chattels, from the date
of the delivery to the sheriff, but not lands, upon which,
the judgment and not the *fieri facias* operates as a lien;
and that after a *descent cast*, before execution levied, resort
must be had to the personal estate.  *Harding vs. Stevenson*,
6 *Harr. and Johns.* 267.   The act of 1785, *ch.* 72, *sec.* 5.

1798, *ch.* 101, *sub-chap.* 8, *sec.* 17. 1 *Sellon's Pr.* 532. *Arnott and Copper vs. Nichols*, 1 *Harr. and Johns.* 472. *M'Elderry vs. Smith*, 2 *Ib.* 72. The statute of 5 *Geo. sec.* 2, *ch.* 7. 3. That parol proof of the date when the *fieri facias* was received by the sheriff, is inadmissible. 4. That there is not sufficient proof of any note or memorandum in writing being made at the time of the sale. On the contrary, the deputy sheriff who made the sale, did not make any entry or memorandum thereof. 5. That notice of the sale of the tract called *Posey's Chance*, was not given according to the act of assembly of 1816, *ch.* 129, and that the sale, as to said tract, was void, if even plaintiff could recover as to the other tracts.

*C. Dorsey*, for the appellee.

1. The *fi. fa.* continues to run, and must be executed as to personal property, notwithstanding the death of the defendant, after the writ is delivered to the sheriff. *Sellon's Pr.* 528. Since the statute of 5 *Geo.* 2, *ch.* 7, lands are made liable to the payment of all debts, and are subject to like remedies, proceedings and process, in any court of law or equity, that personal estate is. 2. In *Bull's Lessee vs. Sheredine*, 1 *Harr. and Johns.* 410, and *Barney vs. Patterson's Lessee*, 6 *Harr. and Johns.* 182, the court recognise the doctrine, that the sheriff's return gratifies the requisitions of the statute of frauds. 3. The *object* of the prayer in regard to the notice of sale, was to transfer a question of law from the court to the jury. It belongs peculiarly to the court to say what is legal notice. The question of the legality of sales is a mixed question of law and fact, and the prayer, therefore, should have been for a hypothetical direction.

ARCHER, J., delivered the opinion of the court.

It is supposed, that the death of the defendant, before a levy on the *fieri facias*, although it was issued, and in the hands of the sheriff before his death, would render a *scire*

*facias* against the heirs and *terre tenants* necessary, and that the sale, made under a *fieri facias* thus issued, and thus levied, passed no title to the purchaser.

Whether the alienation of land to a *bona fide* purchaser, or its descent to the heir before any steps are taken by the plaintiff, to put his judgment in execution, would render a *scire facias* against the heirs and *terre tenants* indispensable, it is not necessary to determine. For the question presented here, is whether pending proceedings in execution of the judgment, and which were all rightful and proper, at the time of their institution, the death of the defendant suspends them in point of law, or if in fact they are afterwards put in execution, the law declares them void. If this were a question connected with a levy on personal property, it would be too clear for discussion. The execution would go on, and the plaintiff would have a right to reap the fruits of his judgment. But this is a levy on land. Should it be governed by different principles? There is no process of execution in *England*, bearing an exact affinity to our *fieri facias*, so far as this question is concerned. We will, however, proceed to notice those, which bear to it the strongest resemblance.

A writ of *sequestration*, being a personal process, grounded on a contempt, and requiring the further order, or action of the court, to give it an effect beneficial to the plaintiff, it is remarkable that it should have been doubted, whether it did not abate *de facto*, by the death of the defendant. Yet it appears to have been long in uncertainty; but it is now settled, that it does abate by the death of the defendant. 3 *Atk. Burdett vs. Rockey,* 1 *Vern.* 58. 2 *P. Wm.* 621. *Wharam vs. Broughton,* 1 *Ves. Sen.* 182. These determinations will show the diversity of views which have been entertained on the subject, and the latter opinions of the court, will show that its abating, depends upon reasons and principles which will not apply to the process under consideration.

The writ of *extent* on a statute merchant, will not abate by the death of the defendant; 2 *P. Wm's.* 621.; and in 2 *Saund.* 70, (C) it is said, that an extent shall go, notwithstanding the death of the defendant shall be returned on a *capias si laicus*. And the same doctrine would seem to be deducible, with regard to a writ of *extendi facias*, issued on a statute staple, or on a recognizance in the nature of a statute staple from 2 *Saund.* 70, (C) in which the nature and character of the sheriff's return, with regard to the lands extended, where the sheriff shall return the death of the defendant, is pointed out. The same principles would seem to apply to the writ of *elegit*, in which any future action of the court, to give the plaintiff the entire benefit of his execution becomes unnecessary; for the inquisition, appraisement, and delivery of a moiety of the lands, is done under the direction of the sheriff and the authority of the *elegit* itself. Like the writs of *elegit* and *extendi facias* upon a statute merchant, the *fieri facias* requires no other order or action of the court, to give to the plaintiff the fruits of his execution. These are reaped, when the sheriff discharges his duty under the process. The mandate goes to the sheriff to seize and sell the lands, and if it be regular in its inception, he derives his authority from the writ, and is bound to execute it. Unlike the original writs, judicial writs do not in general abate by the death of the party. 1 *Bac. Abr. title Abatement.*

The general principle, that where a new person is to be benefitted, or charged by the execution of the judgment, there ought to be a *scire facias* to make him a party, is admitted; but it cannot apply to a case, where the new party becomes interested, after the process is regularly in the hands of the officer for execution. If this be not an exception to the rule, and a *scire facias* against the heirs and *terre tenants* be necessary, then successive alienations and descents, might defeat the plaintiff, *ad infinitum.* Even excessive vigilance could not always secure to the plaintiff the satisfaction of his judgment.

It supposed that there existed no right under the *fieri facias* to levy on the lands, if there was a sufficiency of personal property to satisfy the judgment. Under the writ of *elegit*, if there be enough of personal goods, the sheriff ought not to levy on the lands. But this duty of the officer under the writ of *elegit*, grows out of the statute of *West.* 2. 13 *Edw.* 1. *ch.* 18, which gave that writ. But the statute of 5 *Geo.* 2, *ch.* 7, stripped lands in the Plantations, of the sanctity with which they had been guarded, and by subjecting them to sale, no longer considered them as a secondary fund for the payment of debts in the hands of the debtor, but rendered them equally liable with his personalty. It is at the election of the plaintiff, whether he will seize lands or goods, and this has always been the construction of the statute, unless under peculiar circumstances of equity he shall be restrained from exercising his election, to the prejudice of an alienee, devisee or heir. It is true, that after the death of a debtor, lands are only secondarily liable; but this must be taken with the qualification, that prior to the death of the debtor, they had not become liable to be affected by an execution. It does not appear from the evidence in the cause, that any endorsation was made on the back of the writ, as the statute demands of the sheriff, of the day of its delivery to him, and it is therefore supposed that parol evidence to establish that date is inadmissible. If this idea be correct, there exists scarcely a case in *Maryland*, in which the date of a delivery of a *fieri facias* to the sheriff, could be proved. This requisition has in practice been neglected, and fallen into disuse. To give the statute such a construction here, would make its provision in this respect a dead letter. Its object, was only directory to the officer, that means might be placed in the power of every one, to derive benefit from the salutary provisions of the statute; and was not meant to exclude other evidence, should that officer neglect his duty. *Bealls vs. Guernsey,* 8 *Johns.* 52. There is then proof in the record, that the *fieri facias* was delivered to the sheriff

before the death of the debtor, if it were material to have established that fact. But suppose the fact had not been established, but that merely an execution had been issued by the plaintiff in the judgment; it is most certain that lands in the seizin of the heir, might be levied upon, because the statute renders them liable to seizure, sale, and disposition, in the same manner as personal property ; and in such a case, the levy could have been made on the personal property, in the hands of the executor; for the judgment and execution, binds the personal property from the day of the signing of the judgment, and the test of the writ of execution, against the party himself, and all other persons except purchasers. 1 *Saund. Rep.* 219, *f.* It is true, that the *fieri facias* does not bind land, as it does personal property from the delivery of the writ to the sheriff. The statute of *Charles* II. only applying to goods, but the lien on the lands is from the rendition of the judgment, and the right to execution of lands in the tenure of the heir, grows out of the statute of 5 *Geo.* 2, *ch.* 7, in connexion with that lien.

It does not become necessary to express an opinion how far the sheriff's sale would be operative, to pass title to a purchaser, unless he shall have given the notice of sale required by law, because there is no evidence in the record, from which the jury could infer, that notice had not been given. The adduction of a single advertisement, which does not even appear to have been any where published, or affixed to give notice to the public, can furnish no data for deductions, that regular notices were not given, and in the absence of evidence to that effect, every thing is to be presumed in favor of the performance of his duties by the sheriff. It has been objected, that no memorandum in writing, of the sale by the sheriff, was made at the time of the sale. The sheriff has made a return to the *fieri facias*, which evidences the sale, and has executed a deed to the purchaser, either of which is sufficient evidence of the sale, and a sufficient memorandum, in writing, within the statute

of frauds. *Barny vs. Patterson*, 6 *Harr. and Johns.* 182. It is clearly not necessary, that the return should be endorsed on the writ, or the deed executed at the time of sale.

We have thus noticed all the points which have been raised before us. There are in the record, several other opinions of the court, from which exceptions have been taken, but they have not been argued before us, and we have considered them as abandoned.

JUDGMENT AFFIRMED.