BOYD AND HANCE
vs.
ALEXANDER HARRIS ET AL.

MACKALL HARRIS
vs.
LAVEILLE AND WIFE.
CONSOLIDATED.

SEPTEMBER TERM, 1849.

[CREDITORS BILL—DECREE FOR AN ACCOUNT—INJUNCTION.]

A DECREE for an account in a suit, by one or more creditors against the executor, either for themselves, or on behalf of themselves and all other creditors, is for the benefit of all, and in the nature of a judgment for all, and from the date of such decree, an injunction will be granted upon motion of either party, and upon a due disclosure of assets to stay all proceedings of any creditor at law.

In order, however, to prevent abuse by connivance between an executor or administrator, and a friendly creditor, the practice is, to grant an injunction only when the answer or affidavit of the executor or administrator states the amount of the assets, and upon the terms of bringing the assets into court, or obeying such other order of the court, as the circumstances of the case may require.

The power of this court to grant injunctions to restrain creditors from proceeding at law after a decree for an account, is not confined to cases in which the application is made by the executor or administrator, but extends to applications made by the heir, or by another creditor, or a common legatee, or perhaps by a residuary legatee.

Where judgments at law, upon which executions have issued and been levied upon lands are enjoined ; after the dissolution of the injunction, nothing more is necessary to authorize the sheriff to sell, than writs of *venditioni exponas*. The lands are to be regarded as in *custodia legis*, and the death of the defendant in the judgments after execution had issued and been levied, does not render a *scire facias* necessary, against his heirs or terretenants.

The courts always observe great caution in taking property out of the hands of a sheriff, held by him under execution, and the case of *Alexander* vs. *Ghiselin*,

is the only case in which the sheriff's possession has been disturbed, unless upon some grounds affecting the validity of the judgment, or the regularity of the process, by virtue of which the seizure was made.

A petition was filed, asking that a sale made by the sheriff under the executions upon the judgments above mentioned, should be vacated, and the property resold by a trustee appointed under a decree in a creditor's suit, to to which the judgment creditor was not a party. But the court refused to grant the relief asked for, and said, that it was neither warranted by authority, nor by any established principles of law or equity.

A court of equity, will, under special circumstances, and when the estate is in danger of being sacrificed in consequence of clouds upon the title, or conflict and confusion growing out of the number and character of the liens and incumbrances upon it, interpose, and keeping rival creditors off, sell the property for the general benefit of all.

---

[Sometime in the year 18—, Basil Jefferson, of Calvert County, since deceased, purchased certain land in that county, of one Tubman K. Long, and died before it was entirely paid for, leaving a daughter, Ann Jefferson, (who afterwards intermarried with the complainant Boyd, and died without issue,) his heiress at law. Levin W. Ballard was appointed his administrator, and afterwards, with the consent of said Ann, and in order to save the personalty, he sold the land purchased of Long, to Alexander Harris : who, to secure the payment of the purchase money in installments, gave Ballard his bonds payable at the times therein specified. The personal estate was then handed over to Ann Jefferson, and Ballard, on the faith of said securities given him by Harris, proceeded to pay a large portion of the balance of the purchase money due by his intestate, Jefferson, and afterwards departed this life ; whereupon the other complainant, Richard Hance, was appointed administrator *de bonis non*, of Basil Jefferson, and Robert W. Kent was appointed administrator, and James Kent, (on the death of Robert,) administrator *de bonis non* of said Ballard.

The original object of this suit, which was instituted by Boyd and Hance, (the former as heir of his deceased wife, and the latter as adm. d. b. n. of Basil Jefferson,) against Alexander Harris and others, was to compel the execution of his contract of purchase by Harris, and a proper application of the purchase money due by him ; but in 1849, Harris being then

dead, it was, by bill of revivor and supplement, against his heirs and his personal representative Mackall Harris—Kent not being made a party—converted into a creditor's suit.

Alexander Harris died in 1847, and in September term, 1848, Mackall Harris, his acting executor, filed his bill against the heirs at law of the deceased, for a settlement of the estate of the deceased, and also for a sale of his real estate to pay his debts, in case the personalty should prove insufficient for that purpose. This last case, by an agreement to which Kent was not a party, was consolidated with the case of Boyd and Hance against Harris and others; and, on the 9th of January, 1849, a decree was passed, in both cases consolidated, for a sale of the real estate of said Harris, deceased, to pay his debts.

It further appeared from the papers in the case of Alexander Harris and others, against James Kent, administrator d. b. n. of Levin W. Ballard, deceased, which were agreed to be read at the hearing of this case, that previous to the death of said Harris, to wit, in the year 1841, Kent recovered judgment on the bonds given as above mentioned by Harris to Ballard to secure the payment of the purchase money due by him, and also on a promissory note alleged to have been given also by Harris, for the same purpose, but which, he contended, was given to take up one of said bonds, although in consequence of Ballard's death the bond was never delivered to him. That, in 1845, Harris filed his bill in the equity side of Calvert County Court, in which those judgments were rendered, praying and obtaining upon the grounds therein stated, an injunction to stay execution upon those judgments; which injunction, the case being transferred to this court, was, in October, 1848, dissolved as to all of the judgments, except the one rendered upon the promissory note. Kent, thereupon, proceeded to sell a portion of the land of said Harris, to satisfy said judgments, and through his agent became a purchaser thereof himself, at a price greatly below its value.

On the second of November, 1849, Merrill and others, judgment creditors of Alexander Harris, deceased, filed their petition in this court, praying that the sales to Kent might be an-

nulled, and the lands purchased by him again sold by the trustee appointed under the decree in this cause ; and the matter of the petition having been argued before him, the Chancellor delivered the following opinion :

THE CHANCELLOR :

After reviewing, with the industry and ability for which he was so pre-eminently distinguished, all the authorities upon the question, Chancellor Kent, in the case of *Thompson* vs. *Brown*, 4 *Johns. Ch. Rep.*, 619, stated, that it was "finally settled in the English Chancery that upon the usual decree to account, in a suit by one or more creditors against the executor, either singly for themselves, or specially on behalf of themselves and all other creditors, the decree is for the benefit of all the creditors, and in the nature of a judgment for all ; and all are entitled, and are to have notice to come in and prove their debts before the master ; and that from the date of such decree, an injunction will be granted upon the motion of either party, and upon a due disclosure of assets, to stay all proceedings of any of the creditors at law." At one time, and until a comparatively recent period, this remedy would not be given unless where a bill for an injunction had been expressly filed, against the creditor whose action at law was sought to be restrained, but it was subsequently held, in order to save expense, that the executor when sued at law should be permitted upon giving notice to the creditor, to bring him in, and upon motion, to restrain him by injunction. *Paxton* vs. *Douglass*, 8 *Ves. Jun'r*, 520.

In order, however, to prevent abuse by connivance between an executor or administrator, and a friendly creditor, the practice is to grant an injunction only when the answer or affidavit of the executor or administrator states the amount of the assets, and upon the terms of bringing the assets into court, or obeying such other order of the court, as the circumstances of the case may require. 1 *Story Eq.*, sec. 549 ; *Gilpin* vs. *Lady Southampton*, 18 *Ves.*, 459.

The late Chancellor, in the case of *Hammond* vs. *Hammond*,

VOL. 1—40

2 *Bland*, 362, 36 , said, that though the court when asked for such an injunction, might look into the answer of the executor or administrator and see what amount he admits to be in his hands, or order him to make an affidavit of the amount, and to bring the money into court, yet that it is not an absolute rule of the court to refuse an injunction for want of such an affidavit.

It is also regarded as settled practice, that the power of this court to grant injunctions to restrain creditors from proceeding at law, after this court has passed a decree to account, and thereby assumed the administration of the assets, is not confined to cases in which the application for its interposition is made by the executor or administrator; but, it extends to applications made by the heir or by another creditor, or a common legatee, or perhaps by a residuary legatee. 3 *Daniel's Ch. Prac.*, 1835.

It is therefore supposed, that the court has the power, at the instance of the petitioners, E. H. Merrill and others, and in a proper case would exercise it, to restrain a creditor from proceeding upon judgments against the administrator of the deceased Alexander Harris.

[Having made these preliminary remarks, the Chancellor proceeded to state the nature of the case, after which he continued:]

It is believed that no case has been decided which would justify the court in granting the relief asked for by this petition, and that it is not warranted by any established principle of law or equity.

I am not prepared to go to the extent of saying, that this court may not, after the usual decree for an account, or *quod computet*, in a creditor's suit against the executor, or after a decree for the sale of the real estate upon such a bill—by which the court assumes to itself the general administration of the assets of the deceased debtor—compel a prior judgment creditor to come in and share the fate of the other creditors, when such prior judgment is *de bonis testatoris* simply.

In the case of *Lee* vs. *Park*, 15 *Eng. Cond. Ch. Rep.*, 715,

the master of the rolls refused, under the special circumstances of that case, to restrain the creditor from issuing execution upon his judgment *de bonis testatoris, et si non, de bonis propriis,* as to costs, rendered before a decree against executors to account. But it is clear that the refusal was not upon the ground that such was the invariable course of the court, and one or two cases are referred to in which prior judgment creditors had been so restrained from proceeding upon their judgments.

And in the case of *Hammond* vs. *Hammond,* 2 *Bland,* 362, the late Chancellor said, that if a bond creditor has got a judgment against the executor or heir before the decree, then after the decree, although such creditor may come in and prove as a judgment creditor against the real or personal estate, yet the court will, on application, grant an injunction to prevent him from taking out an execution against the assets.

But the case now under consideration is radically and widely different from any of those referred to in the argument. Here the judgments were rendered against the deceased debtor in his lifetime, and executions upon them were issued and laid upon the property afterwards purchased by Kent, also before the death of Harris.

These judgments, it is true, were afterwards enjoined, upon a bill filed by Harris, but upon the dissolution of the injunction in October, 1848, nothing more was necessary, to authorize the sheriff to sell, but writs of *venditioni exponas.* The lands are to be regarded as in *custodia legis,* and the subsequent death of Harris interposed no obstacle to the proceedings of the sheriff.

The case of *Hanson* vs. *Barnes' Lessee,* 3 *G. & J.,* 359, is conclusive to show, that notwithstanding the death of Harris, after the execution had issued and been levied, a *scire facias* against his heirs or terretenants was not necessary, and that a sale under such process passed the title to the purchaser. Indeed, the case of *Hanson* vs. *Barnes* goes beyond this, because the sale in that case was decided to transfer the title, though the execution had not been levied before the death of the

debtor. It had been issued and placed in the hands of the sheriff, but not actually levied, before the event of the death occurred.

In this case, the statement of facts shows that the executions were levied before the death of Harris, and unless the case of Hanson and Barnes is to be overturned, the sheriff was fully authorized after his death to proceed and sell the property.

Great caution has always been observed by the courts in taking, or authorizing property to be taken, out of the hands of a sheriff, held by him under executions, and it probably may be safely asserted that the case of *Alexander et al.* vs. *Ghiselin et al.*, 5 *Gill*, 138, is the only case in which the sheriff's posesss- sion has been disturbed, unless upon some grounds affecting the validity of the judgment, or the regularity of the process, by virtue of which the seizure was made.

But the case of Alexander vs. Ghiselin was confessedly de- cided upon the special terms of the act of 1805, ch. 110, sec. 7, the true construction of which, the court said, required the trustee of the insolvent to take into his possession all the estate and effects to which he had a right of possession at the time of his application, and to sell and dispose of all his property, whether in possession, remainder or reversion, and to pay off the liens and incumbrances thereon. Regarding an execution as a lien on personal property only when actually levied prior to the insolvent's petition.

The present application, moreover, requires the court to stretch its authority beyond even the case of Alexander and Ghiselin. There the trustee in insolvency was decided to be authorized to take property out of the hands of the sheriff, though actually levied on prior to the insolvent's petition.

But in this case, the property is no longer in the hands of the sheriff, having been before the present petition was filed, sold by him in the due execution of his duty, and in conformity with the process in his hands.

Even then, if the principles settled in the case of Alexander vs. Ghiselin could be invoked in aid of these petitioners, which is not admitted, still they stop short of warranting the relief

now asked for, which is not merely that a judgment creditor who has obtained his judgment in the lifetime of his deceased debtor, and issued and levied his executions prior to that event, shall be compelled to come in and await the proceedings in a creditor's suit, but that a sale made under such an execution shall be vacated, and the property sold resold by the trustee appointed in the creditor's suit.

Some stress has been laid upon the fact that Kent was a party to the original bill filed by Boyd and Hance in 1845, and which was subsequently to the death of Harris converted into a creditor's suit. But the bill to which Kent was a party, and to which he responded, had none of the features of a creditor's bill, and although the bill of revivor and of supplement, filed after the death of Harris, may have given it that character, Kent not having been made a party to this latter proceeding, it cannot be right to affect him with it. He answered the original bill and consented to abide by the decree which the court might pass upon the case made by that bill. But surely this consent should not oblige him to submit to a decree passed upon another bill to which he was no party, and to which he never responded. It was the unquestionable right of Kent, if it is proposed to bind him by the supplemental bill, to file his answer to it, when he might, and probably would, have protested, under the circumstances, against being brought in and exposed to the delay of a creditor's suit. He had his judgment and execution levied, and would most likely have said, I prefer to proceed upon them, to coming here and waiting the result of this cause. That he had a right to answer the supplemental bill is clear. *Thomas* vs. *The Visitors of Frederick School*, 7 *G. & J.*, 387.

It has been urged that this is one of those cases in which the court, interposing for the good of the general body of the creditors, will prevent an individual creditor from proceeding separately to enforce his own debt. That this court has, under special circumstances, and when the estate was in danger of being sacrificed, in consequence of the clouds upon the title, or conflict and confusion growing out of the number and charac-

40*

ter of the liens and incumbrances upon it, interposed, and keeping the rival creditors off, sold the property for the general benefit of all, seems to be admitted. It is a power, however, of rather an extraordinary kind, and to be cautiously exerted. The difficulties and embarrassments which surround this estate are not perhaps of such a complicated character as to justify so strong a proceeding; and, besides, here the sale has been made, and no case I presume has gone to the extent of depriving a creditor of the fruits of a sale actually made. It is admitted that the property purchased by Kent sold for less than its actual value. This is to be regretted, but I see nothing in the cause to impute blame to him on that account; and therefore I do not think the sale, for this reason, should be set aside.

Being of opinion, then, that the relief prayed by the petition cannot be granted, it must be dismissed.

———

[No appeal was taken from this order.]