# FIRST NATIONAL BANK OF FEDERALSBURG *v.* EQUITABLE LIFE ASSURANCE SOCIETY, ET AL.

[No. 53, January Term, 1929.]

*Decided April 17th, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Clarence A. Tucker,* with whom were *Merriken & Merriken* on the brief, for the appellant.

SLOAN, J., delivered the opinion of the Court.

On March 5th, 1928, the appellant, the First National Bank of Federalsburg, Maryland, caused an attachment to be issued out of the Circuit Court for Caroline County on a judgment confessed to it in that court by B. E. Butler, Hattie Butler, and Martha E. Butler for $2,047.64. The attachment was laid in the hands of the Equitable Life Assurance Society of the United States, garnishee, by service on Wilmer

B. Parker and Ernest Wright as agents of the company (Code, art. 75, sec. 27), and was also laid in the hands of the agents as individuals. On the same day, March 5th, 1928, another attachment was issued by the appellant against the same judgment debtors, directed to the sheriff of Baltimore City, and by him laid in the hands of the Life Assurance Society by service on the Deputy Insurance Commissioner, the Insurance Commissioner being absent. (Code, art. 48A, sec. 28); *Boyd v. Ches. and O. Canal Co.,* 17 Md. 195, 219.

The Assurance Society on April 5th, 1928, filed pleas to the writs in both cases, wherein it confessed that it had in hand $5,000, being the proceeds of an insurance policy on the life of Bruce E. Butler (defendant) in favor of his wife, Hattie E. Butler, but whether she was the same person as Hattie Butler, judgment debtor, it neither admitted nor denied. On April 2nd, 1928, the return day, no appearance having been entered for the defendants or garnishee, judgments of condemnation *nisi* were entered, but on motion of the defendants they were stricken out. Messrs. Parker and Wright filed pleas of *nulla bona,* and, as nothing further appears to have been done with regard to them, we may assume that as garnishees they are out of the case, and any other reference to a garnishee is intended to refer to the Assurance Society. The garnishee was granted leave to withdraw its pleas and its counsel, as well as counsel for the defendants, undertook to appear specially. The garnishee's attorney had already appeared and pleaded, and so far as it is concerned it has waived any defects of service or summons. *Ireton v. Baltimore,* 61 Md. 432; *Harrison v. Morton,* 87 Md. 671. By filing pleas to the writ it had not waived its right to a motion to quash. 2 *Poe, Pl. & Pr.,* sec. 539. The garnishee later on filed a motion to quash, and motions identical in form with that of the garnishee were filed by the defendants. On October 4th, the court overruled the motion to quash and thereupon the garnishee and defendants, on leave granted, filed an amended motion to quash, which was sustained, and it is from this action of the court that this appeal was taken.

The amended motion to quash was a repetition of the orig-

inal motions with the addition of a sixth reason, to wit: "Because at the time of the issuing of the writ of attachment in this case Bruce E. Butler, one of the defendants, was dead, and no suggestion and affidavit of such fact had been made as by law required under section 20 of article 26 of the Code of Public Laws of Maryland." Inasmuch as the original motion, which contained five reasons, alleged by garnishee and defendant, was overruled and decided by the court below favorably to the appellant (and we think properly), the only question to be considered here is whether the failure of the appellant to follow the procedure provided for by section 20 of article 26 of the Code (Act of 1888, ch. 421), renders the attachment invalid. Amongst other things, the section of the Code referred to provides, "in case of the death or marriage of any of the defendants in any judgment or decree herein mentioned, the plaintiff in any such judgment or decree, at any time within twelve years from the date of the judgment or decree, upon a suggestion supported by affidavit of the death or marriage of any of said defendants shall be entitled to have an execution or attachment issued against the defendant still alive, and such execution or attachment may be laid on any goods, chattels, lands and tenements of any of said remaining defendants."

To reach the conclusion attained by the trial court in this case it could only have been on the theory that the act was exclusive, and that it afforded the appellant the only means whereby it could levy on the property of the living defendants by attachment or execution, and that, unless the procedure provided by the act had been followed, the plaintiff had no way to make its judgment by any proceeding unless there had been a *scire facias* against the heirs or personal representatives of the deceased defendant. Whether this would have been futile we do not know, as there are no facts appearing in the record and we cannot, therefore, know whether he left any property. The Act of 1888, ch. 421, says that the plaintiff would be "entitled" to an attachment against the living defendants "upon a suggestion supported by affidavit," but

does this mean that, if there is no such "suggestion," the plaintiff shall not "be entitled" to an attachment?

The appellant contends that under the common law it is entitled to an execution against all of the defendants, which is extended by Code, art. 9, sec. 29 (Act of 1888, ch. 507), to attachment on judgment "instead of any other execution" against the lands, tenements, goods, chattels, and credits of the defendant, and that the same may be levied against the goods, etc., of any one of the living defendants. The appellants further contend that the Act of 1888, ch. 421, does not deprive a judgment creditor of any of the remedies for the collection of his debt which were available before the passage of that act. With this contention we agree. At common law, in the case of a judgment against one defendant on whose property there was execution, and the defendant died after the *teste* date of the writ, but before execution was actually issued, his property could be levied upon and sold without a *scire facias* (*Bragner v. Langmead,* 7 T. R. 24, 101 Eng. Rep. 834; *Waghorne v. Langmead,* 1 B. & F. 571, 126 Eng. Rep. 1071), on the theory that a judgment was deemed to be entered as of the first day of the term. *Freeman on Executions* (3rd Ed.), sec. 451; 8 *Enc. Pl. & Pr.* 332; 2 *Poe, Pl. & Pr.,* sec. 666; *Alderson on Judicial Writs and Process,* 109; 23 *C. J.* 385; *Docura v. Henry,* 4 H. & McH. 480; *Hanson v. Barnes,* 3 G. & J. 359; *Jones v. Jones,* 1 Bland, 443.

When the defendant has died before the issuance of a *fi. fa.,* it is necessary to revive the judgment against his executor or administrator if personal property is to be taken, and against the heirs or terre tenants if the real estate is to be levied upon, otherwise where the process is issued before the death of the defendant. "The general principle that where a new person is to be benefited or charged by the execution of the judgment there ought to be a *scire facias* is admitted, but it cannot apply to a case where the new party becomes interested after the process is regularly in the hands of the officer for execution. If this be not an exception to the rule and a *scire facias* against the heirs and terre tenants be necessary, then successive alienations and descents might defeat the plaintiff *ad*

*infinitum.* Even excessive vigilance could not always secure to the plaintiff satisfaction of his judgment." *Hanson v. Barnes,* 3 G. & J. 359, 366; *Trail v. Snouffer,* 6 Md. 308; *Elliott v. Knott,* 14 Md. 121; 2 *Poe, Pl. & Pr.,* sec. 664; 8 *Enc. Pl. & Pr.* 329; *Freeman on Executions,* sec. 35.

The case before us is one wherein one of the defendants. died after the *teste* day of the writ of attachment on judgment and before the date of actual issue, with a levy in the hands: of a garnishee who confessed funds in hand belonging to one of the two surviving defendants. There is no effort made here to charge a stranger to the original proceeding, and the only question is whether the plaintiff (appellant) is denied its common law right to issue against all the defendants by the Act of 1888, ch. 421, which allows it, on complying with the terms of the statute, to proceed against the survivor. We have no doubt that before the passage of the Act of 1888, ch. 421, it had the right to issue an execution or attachment against the defendants and to seize the property of any one of them surviving to satisfy its judgment, and we do not think the remedy of which it could have availed itself has been impaired by that act. Judgments in this state are joint and several, and the judgment creditor, although he must issue against all, may levy on the goods of one defendant though another may have goods liable to execution. *Myer v. Frenkil,* 113 Md. 46; *Freeman on Executions* (3rd Ed.), sec. 36.

What the appellant, which had a joint and several judgment against the defendants, did, was to cause an attachment. to be issued against all of them, the writ therein conforming to the judgment. *Hall v. Clagett,* 63 Md. 57, 60; 8 *Enc. Pl. & Pr.* 334; *Alderson on Judicial Writs,* 93.

The amended motion to quash alleges that Bruce E. Butler,. one of the judgment debtors, was dead when the writ was. issued. This is a statement of fact not appearing on the face of the papers, and should have been sworn to, and for this. reason alone the judgment should be reversed (2 *Poe, Pl. & Pr.,* sec. 537), but we are going to decide the point raised by the amended motion, so that there may be an end of the

question in this case. The great weight of authority is that, in a judgment against plural defendants, of whom one or some may be dead, the sheriff may levy an execution on the goods of a surviving defendant without the plaintiff being required to revive his judgment against the heirs or representatives of the deceased defendants. *Freeman on Executions* (3rd Ed.), sec. 36. The principle, as expressed in *Pennoir v. Brace,* 1 Salk, 319, 91 Eng. Rep. 282, is, "Where any new person is either to be better or worse by the execution, there must be a *scire facias,* because he is a stranger, to make him party to the judgment, as in the case of executor or administrator; otherwise where the execution is neither to charge nor benefit any new party, as in this case, where there is a survivorship; for there is no reason why death should make the condition of the survivors better than before." *Hanson v. Barnes, supra; Alderson on Judicial Writs,* 111.

The difference or distinction between the Act of 1888, ch. 421, and the common law method of enforcing the collection of judgments against surviving defendants, is that under the former the plaintiff, on suggestion of death of a defendant supported by affidavit, issues execution or attachment against the survivors, while under the latter the execution or attachment is against all the defendants, though the judgment can only be laid on the property of the survivors or any of them, unless the judgment be revived against the property of the dead defendant, which is also provided for by the Act of 1888.

The appellant could have enforced its judgment against the surviving defendants if the Act of 1888 had not been passed, and we find nothing in that act from which it may be inferred that any remedies theretofore existing for the enforcement of execution or attachments have been taken away, and the creditor is free to adopt either method, the ultimate result being the same.

It is, therefore, our opinion that the order must be reversed and the case remanded.

*Order reversed with costs to the appellant, and case remanded.*