NATHAN WATERS *et al. vs.* CHARLES DUVALL.—*Dec.* 1839.

The principle is well established, that to enable the sheriff to sell land, and vest a valid title in the purchaser, a seizure is indispensable, and that without a valid seizure the purchaser acquires no title.

If a levy be made upon *part* of a tract of land, without defining in the return the *part* levied upon, a sale made without describing specifically the land sold will be void;—and if the sheriff levies upon a part of a tract of land, without describing the part levied upon, and subsequently, upon a vendi. tioni exponas, returns that he has sold *the whole* tract, the sale will be equally void.

A sheriff cannot sell what he has not levied upon, and the purchaser's title will be defective unless the property seized is described with sufficient certainty, either in the return of the sale, or in the deed given by the sheriff to the purchaser.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 3rd July 1835, by *Charles Duvall*, alleging that, on the 30th December 1826, he attended the sale of certain lands, &c., the property and estate of *Nathan Waters*, by the sheriff of *Prince George's* county, and purchased the same for $1350: that said sale was made at the instance of *Samuel Peach*, who, at April term 1824, obtained a judgment against the said *Nathan Waters* for $7247 87, with interest from, &c., upon which execution issued, and was levied upon the property of said *Nathan Waters*. That notwithstanding the said sale, the possession of the said lands and tenements is now withheld from the complainant by the said *Nathan Waters*, a certain *Nathan J. Waters*, and also by the widow and children of a certain *Samuel Ratcliffe*, who married the daughter of the said *Nathan Waters*, under pretence of a purchase from the said *Nathan Waters*, previous to the rendition of the said judgment for value, which is false, dishonest and fraudulent, as against the complainant, and the then creditors of *Nathan Waters*, and especially as against the said *Peach*. That *Nathan Waters*, and *Nathan J. Waters* and *Samuel Ratcliffe*, confederated to make a deed of said property shortly before the said judgment, to cheat and defraud the creditors of the said *Nathan Waters*, and now held the same in

conformity to such fraudulent agreement. The bill then proceeded to charge other acts of fraud, and the conveyance to be fraudulent in hindrance of creditors, with relation to the said lands, and prayed that the several fraudulent conveyances might be vacated; for a discovery and account of rents and profits; for a surrender of the premises, and for general relief.

The complainants exhibited the judgment at law of *Samuel Peach* against *Nathan Waters*, rendered on the 12th April 1824, and a fieri facias issued thereon 17th August 1824. At October term 1824, *Thomas Osbourn*, the sheriff of *Prince George's* county, returned this writ "*Levied as per schedule and stayed by injunction.*" The schedule showed a levy, as follows:

" One negro man named John.

" One ditto Jack.

" One tract of land called Pasture Enlarged, two hundred acres.

" One ditto Osbourn's Lot, and part of Pleasant Grove, 52 acres.

" Part of Duvall's Pleasure, 130 acres.

" Part of Tukesbury, 50 acres.

" Part of Tukesbury and Part of Walker's Delight, 150 acres.

" Part of Friendship, containing 150 acres."

The injunction, which had been obtained by *Waters*, being dissolved, on the 20th March 1825, *Samuel Peach* sued out another writ of *fieri facias*, directed to *George Semmes*, sheriff of *Prince George's* county, which was returned, "*Levied as per schedule, and not sold for the want of bidders.*"

The levy was as follows:

" One tract of land called Pasture Enlarged, 200 acres.

" One ditto Osbourne's Lot and Part of Pleasant Grove, 52 acres.

" Part of Duvall's Pleasure, 150 acres.

" Part of Tukesbury, 50 acres.

" Part of Tukesbury and Walker's Delight.

" Part of a tract of land called Friendship, 180 acres."

On the 13th July 1825, and 4th December 1826, writs of

venditioni exponas were issued on this levy, to which latter writ the sheriff made the following return, viz:

"Made by a sale to *Doctor Charles Duvall* on the 30th December 1826, of all the interest of the defendant in and to the following parcels of land:

"One tract called *Pasture Enlarged*, containing 200 acres more or less.

"One tract of land called *Osbourn's Lot* and part of *Pleasant Grove*, containing 50 acres more or less.

"One tract of land called *Duvall's Purchase*, a part of *Duvall's Purchase* containing 150 acres more or less, and

"One tract of land called *Tukesbury* and part of *Tukesbury and Walker's Delight*, containing 150 acres more or less, and

"A tract of land called *Friendship*, containing 180 acres more or less,—the sum of $1350 which has been paid to me by the said *Charles Duvall*, and by me to the plaintiff's attorney."

On the 11th Oct. 1827, *George Semmes*, sheriff of *Prince George's* county, executed a deed to the complainant *Charles Duvall*, for the land purchased at the sale under the *vendi exp.* in which the premises sold were described as follows:

One tract of land called *Pasture Enlarged*, containing 200 acres more or less. One tract of land called *Osbourn's Lot* and part of *Pleasant Grove*, containing 52 acres more or less. One tract of land called *Duvall's Pleasure* or part of *Duvall's Pleasure*, containing 150 acres, more or less. One tract of land called *Tukesbury* and part of *Tukesbury* and *Walker's Delight*, containing 150 acres more or less; and a tract of land called *Friendship*, containing 108 acres;—the said tracts, parts of tracts, or parcels of land, being the property of him the said *Nathan Waters*, and comprehending the whole of his interest or right, in and to each and all of them."

On the 18th June 1835, the said *George Semmes* executed, in character of late sheriff of *Prince George's* county, another deed to the said *Charles Duvall*, in which the property levied upon and sold as aforesaid, was described as follows:

"*Pasture Enlarged*, containing 200 acres; *Osbourn's Lot*

and *Pleasant Grove,* (called in the said sheriff's schedule *Osbourn's Lot* and part of *Pleasant Grove*) containing 52 acres; *Duvall's Pleasure,* (called in said schedule *Part of Duvall's Pleasure,*) containing 150 acres; *Tewkesbury* and *Walker's Delight,* (called in the aforegoing schedule *Part of Tukesbury* and *Part of Walker's Delight,*) containing together 200 acres, and *Friendship,* (called in said schedule *Part of Friendship,*) containing 182 acres."

The deed of the 17th February 1824, from *Nathan Waters* to *Nathan J. Waters* and *Samuel Ratcliffe,* impeached by the bill, conveyed "all that part of a tract or parcel of land lying and being, &c., called *The Pleasant Grove,* whereon *W. B. & R. T.* now live, containing 259¾ acres; also, that tract called *Walker's Delight,* containing 100 acres; all that part of a tract or parcel of land called *Friendship,* containing 103 acres; the same being the land I purchased of *Thomas Jones* deceased; also, part of three other tracts of land, called *Osbourn's Lot, Beck's Addition,* and the *Parcel Enlarged,* the three parts containing 276 acres more or less; the same being the land I purchased from the heirs of *John Williams* deceased, except that part of the said *Parcel Enlarged,* which I heretofore sold to *Osbourn Belt,* which is not yet ascertained."

On the 9th August 1825, *Samuel Ratcliffe* conveyed a portion of the above described premises to *Nathan J. Waters,* for a nominal money consideration.

On the 29th August 1825, *Nathan J. Waters* conveyed to *Samuel Ratcliffe* his interest in the property described in the deed of 17th February 1824, not conveyed by *Ratcliffe* in his deed of 9th August 1825.

The defendants in their answers denied the fraud imputed to them, insisting upon the fairness and *bona fide* character of the deeds under which they claimed; and contended, that the executions and levies under which the complainant claimed, were void and inoperative, as was also the deed executed to him by the sheriff.

To this answer the complainants put in the general replication, and a commission was issued. A very voluminous body

of evidence, documentary and otherwise, in relation to the con-dition, solvency and conduct of the grantors and grantees of the impeached deeds was returned, but as the decision of this court did not involve the consideration of that part of the evidence, the reporters do not deem it necessary to introduce it.

At December term 1837, the Chancellor (BLAND) decreed that the deeds of the 17th February 1824, 9th August 1825, and 29th August 1825, be and the same are hereby severally set aside, and declared to be null and void, to all intents and purposes whatever, so far as the same may interfere with, or in any manner affect, the right and claim of the said plaintiff, *Charles Duvall*, unto the several parcels of land specified in the said return to the said writ of *fieri facias*, and in the deeds from the said sheriff; by which it appears that the said plaintiff became the purchaser thereof, as in the proceedings mentioned, and that the defendants pay the costs, &c. The chancellor being of opinion that the proofs satisfactorily sustain the allegations of the plaintiff, that the several deeds in the decree mentioned are fraudulent and void, as against the claim of the plaintiff, and that the said return to the said *fieri facias*, and the deeds from the said sheriff, are sufficiently certain.

From this decree the defendants appealed.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, and CHAMBERS, J.

By T. G. PRATT and C. C. MAGRUDER for the appellants, who contended—

1st. That the allegations of fraud in the bill are denied by the answers, and are not sustained by the proof taken in the cause.

2nd. That the deed from *Nathan Waters* to *Nathan J. Waters* and *Samuel Ratcliffe*, conveys a part of a tract of land called "*Parcel Enlarged*," and a parcel of land called "*Beck's Addition*," which are not included either in the return to the writs of fieri facias, venditioni exponas, or deed from the sheriff to the appellee, and that the decree of the Chancellor is at

least erroneous so far as it vacates said deed in reference to those parcels of land.

3rd. That there is no allegation in the bill, or amended bill, that *Nathan Waters* had not sufficient property to pay his debts, independent of the land called "*Friendship*" conveyed by *Philip Snowden* to the appellant, *Nathan J. Waters*, in 1823, and that the Chancellor therefore erred in vacating that deed.

4th. That *Nathan Waters* never had title to the parcel of land called "*Friendship*," and that he had other property more than sufficient to pay his debts. It will therefore be insisted, that the decree of the Chancellor must be reversed so far as it vacates the deed of said land from *Philip Snowden* to said *Nathan J. Waters*.

5th. That the decree of the Chancellor (if it can bear that construction) must be reversed so far at least as it vacates the deed from *Nathan Waters* to *N. J. Waters* and *S. Ratcliffe*, in reference to any portion of property not purchased by the appellee.

6th. It will be insisted, that the appellee derived no title under the sale made by the sheriff in this case, and consequently had no interest in the lands conveyed in the deeds mentioned in the Chancellor's decree, and that said decree is therefore erroneous.

7th. That the sheriff's return to the writ of fieri facias does not describe the property levied on with sufficient certainty to pass any title to the appellee.

8th. That the writs of venditioni exponas, and the return of the sale to the appellee made by the sheriff to the last of said writs, does not sufficiently describe the property to pass any title to the appellee.

9th. That the deed from the sheriff to the appellee, dated in 1835, is inoperative and inadmissible in evidence for any purpose, and does not cure the defects in the returns to the writs of fieri facias, and venditioni exponas.

10th. That although the sheriff may, by his return to a venditioni exponas, or by a deed executed in due time, *amend* his return to the fieri facias, that he will not be permitted ei-

ther by his return to the venditioni exponas or deed, to *contradict* his return to the fieri facias.

11th. That the sheriff in making a sale is to be considered as an officer of the law, or as the agent of the parties, and in either view, that his declarations can only be admissible when they are a part of the "*res gestæ,*" and that his deed of 1835, after he ceased to be sheriff, and after his agency in reference to the sale had terminated, cannot be received as admissible evidence in this case.

12th. That the sale made in this case is invalid, because the property sold consisted of various distinct parcels of land distant from each other, and were at the instance of the purchaser and the plaintiff's attorney, sold in mass, and for less than one-fifth their value.

13th. The appellants will rely upon the objections in the record to the admissibility of the proof taken by appellee under the commissions returned in this case.

14th. It will be insisted, that no admission made by the adult defendants in their answers, can affect the minor defendants.

15th. That the appellee was not a creditor of *Nathan Waters,* and that it was not competent for him to file the bill in this case.

By T. F. Bowie and R. Johnson for the appellees, who contended that the evidence in this cause proves—

1st. That the deed from *Nathan Waters,* to his son *Nathan J. Waters* and his son-in-law *Samuel Ratcliffe,* dated 17th February, 1824, was made without any valuable consideration. That said *Nathan Waters* was indebted at the time of its execution, and that said deed was made with the view to hinder and delay the creditors of the said grantor, or to evade the payment of his debts, and is therefore fraudulent and void as against his creditors, as well as those who were creditors at the time of its execution, as against his subsequent creditors.

2nd. That the deeds of partition between *Nathan J. Waters* and *Samuel Ratcliffe* (grantees in the first deed) of the same

property among themselves in severalty, dated 24th August, 1825, were executed in furtherance of said fraudulent intent, and are therefore void as against the said creditors of *Nathan Waters,* the original grantor.

3rd. That the deed from *Philip Snowden* to *Nathan J. Waters,* dated 9th June 1823, for the tract of land called *"Friendship,"* was executed without any valuable consideration being paid for the same by the grantee therein, *Nathan J. Waters;* but was made by the said *Philip* at the instance and by the procurement of the said *Nathan Waters,* who had before that time purchased the said land from the said *Philip,* and paid the purchase money for the same; and that said *Nathan Waters* procured its conveyance to his son *Nathan J. Waters,* the grantee therein, for the purpose and with the view of cheating and defrauding his creditors, and that therefore said deed is void as against said creditors.

4th. That the lands or a greater part of them, embraced in the foregoing fraudulent deeds, were levied on, and sold by the sheriff on the 30th December, 1826, as the property of said *Nathan Waters,* under a judgment rendered at April term, 1824, of *Prince George's* county court, at the suit of *Samuel Peach,* who was a creditor of the said *Nathan Waters* at the time of the execution and delivery of all of said deeds, and whose suit to recover his said debt was actually pending at the time of the execution of the said deeds of the 17th February 1824, and 9th June, 1823. That the appellee became the purchaser at the said sheriff's sale, of a portion of the lands embraced in said deeds, and claims title thereto under and by virtue of said sale.

5th. The appellee relies on the judgment of *Peach,* and all the proceedings thereunder, including the fieri facias, venditioni exponas, and the sheriff's return thereto, and his two several deeds, the one bearing date the 11th October, 1827, and the other on the 18th June, 1835, as sufficient evidence of said sale, and sufficiently descriptive of the lands sold, as to vest the title in him to the several tracts of land embraced in the said deeds and sheriff's returns. That being so entitled, this

court will remove the obstructions in the way of his recovering possession of them at law, by affirming the Chancellor's decree cancelling the deeds fraudulently conveying said lands to the appellants.

6th. If the appellee is entitled to any of the lands embraced in said fraudulent deeds by virtue of the sale made by the sheriff, the decree ought to be affirmed, because if said deeds were void as against the appellee's title, they are equally so as against all other creditors of said *Nathan Waters*, whose rights should be protected by the decree.

STEPHEN, J., delivered the opinion of this court.

Under the views which we have taken of this case, we do not deem it necessary to decide many of the questions which were argued by the counsel for the respective parties before this court.   Whether the proof establishes the fraudulent character of the deeds, so far as the rights of creditors were concerned, and whether they ought to have been declared void absolutely and totally by the court below, or only partially, so far as the rights of the appellee were concerned; whether the appellee as a purchaser at the sheriff's sale, was clothed with all the rights of the plaintiff as a creditor, and therefore entitled to impeach the deeds on the ground of fraud—are questions not necessary to be decided, because, upon the best consideration we have been able to give the case, we do not think he has shown himself to have such a standing in court, as to be entitled to call for a decision upon such questions.   His right to impeach the deeds as fraudulent, must be founded upon the fact, that he has obtained a valid title to the several tracts or parcels of land, or some one of them, contained in the deeds as a purchaser at the sheriff's sale, and that the deeds, if not set aside, will operate to the prejudice of such title, and deprive him of the fruits of his purchase.

The first question therefore which presents itself is, has he acquired such a title? and, after a careful examination of all the proofs in the cause, we have come to the conclusion that he has not.   The second *fieri facias* was the effective writ,

under which the *venditioni exponas* issued, by the command of which the sale was made. To that writ the sheriff made a return, that he had seized the following tracts, or parts of tracts of land, to wit; "one tract of land called *Pasture Enlarged*, containing 200 acres; one tract of land called *Osbourn's Lot and part of Pleasant Grove*, containing 52 acres; *Part of Duvall's Pleasure*, containing 150 acres; part of *Tukesbury*, containing 50 acres; part of *Tukesbury* and *Walker's Delight;* and part of a tract of land called *Friendship*, containing 180 acres. The return to the venditioni exponas states the sale of the following tracts, or parts of tracts of land; that is to say— one tract of land called *Pasture Enlarged*, containing 200 acres; one tract of land called *Osbourn's Lot* and part of *Pleasant Grove*, containing 50 acres; one tract of land called *Duvall's Purchase*, or *Part of Duvall's Purchase*, containing 150 acres; one tract of land called *Tukesbury* and *Part of Tukesbury* and *Walker's Delight*, containing 150 acres; and one tract of land called *Friendship*, containing 180 acres. In the first deed of the sheriff, executed in 1827, the lands are described to be, one tract of land called *Pasture Enlarged*, containing 200 acres; one tract of land called *Osbourn's Lot* and part of *Pleasant Grove*, containing 52 acres; one tract of land called *Duvall's Pleasure* or *Part of Duvall's Pleasure*, containing 150 acres; one tract of land called *Tukesbury* and *Part of Tukesbury* and *Walker's Delight*, containing 150 acres, and a tract of land called *Friendship*, containing 108 acres. In the deed of 1835, executed by the sheriff, the lands conveyed are described to be, tracts of land called *Pasture Enlarged*, *Osbourn's Lot* and *Pleasant Grove*, *Duvall's Pleasure*, *Tukesbury* and *Walker's Delight*, and *Friendship*. The deed of the 17th of February 1824, from *Nathan Waters* to his son *Nathan J. Waters* and *Samuel Ratcliffe*, which is impeached as fraudulent, conveys to them the following tracts or parts of tracts of land, to wit; "All that part of a tract or parcel of land, lying and being in the county and state aforesaid, called the *Pleasant Grove*, whereon *William Beck* and *Richard Toogood* now live, containing 259 acres and ¾ of an acre, more or less; also, all

that tract or parcel of land lying in the county and state afore-
said, called *Walker's Delight*, containing 100 acres of land,
more or less; likewise all that part of a tract or parcel of land
lying in the county aforesaid, called *Friendship*, containing 103
acres, more or less; also, parts of three other tracts of land,
called *Osbourn's Lot*, *Beck's Addition*, and the *Parcel Enlarg-
ed*, containing 276 acres, more or less. The deed from *Snow-
den* to *Nathan J. Waters*, made in 1823, is for the tract of land
called *Friendship*. These are the deeds which the complain-
ant charges in his bill to be fraudulent, and which he seeks
to set aside upon that ground. To entitle himself to impeach
those deeds, or either of them, upon the ground of fraud, it is
incumbent upon him to show that he became the purchaser at
the sheriff's sale, and thereby acquired a valid title to the lands
therein mentioned, or to some one tract or part of a tract, con-
veyed by them to the grantees therein named. This we think
upon a careful examination of the deeds, and the executions
and returns made by the sheriff, he has failed to do.

It seems to be a principle well established, not only by the
decisions of this State, but by those of our sister States, and
by the laws of *England*, that, to enable the sheriff to sell, and
vest in a purchaser at his sale a valid title, a seizure of the land
sold is indispensable, and that without a valid seizure, no title
can be acquired by a purchaser at his sale. Upon adverting
to the return made to the second *fieri facias* it will be found,
that the land called *Friendship*, is the only land embraced in
the deeds alleged to be fraudulent, upon which the sheriff levied
under that writ, and to sell which, the venditioni exponas is-
sued, under which the sale was made. By that return it ap-
pears, that he levied upon only a part of that tract, without
any description in the return of the part so levied upon; and
that a sale made under such a seizure, without a specific de-
scription of the land sold, would be void, it is deemed unne-
cessary to cite authorities to prove. Had the sale therefore
been made under the *fieri facias*, it would have been clearly
void, and the purchaser would have acquired no title. But no
sale having been made under the *fieri facias*, a *venditioni ex-*

*ponas* was issued, commanding him to sell the land seized under that writ, and under the *venditioni exponas* the sale in question was made.     To the last mentioned writ he returned, that he had sold not a part only of that tract stated to have been seized in his return to the *fieri facias,* but the whole of it; and the question is; whether such a return, made to the *venditioni exponas,* cures the defect of uncertainty in the seizure, and vests a valid title in the purchaser to the whole of that tract.

It is true this court have decided, in 1 *Gill & John.* 443, that a purchaser at a sheriff's sale is entitled to the benefit of that officer's return, both to the *fieri facias* and *venditioni exponas,* and when the description of the subject levied on, according to the schedule returned under the first writ, is defective, it may be amended and rendered certain, by the return of the sheriff's proceedings under the second writ; but in that case it will be found, that the return to the *venditioni exponas* describes the land sold by metes and bounds, thereby rendering certain the land which had been seized under the *fieri facias,* and states it to be the same land which had been seized under that writ; and this, it is believed, is the utmost extent to which this court has gone in giving validity and effect to such a defective seizure.     But in this case, the sheriff states that he had sold the whole tract, and it not appearing by the return of the sale, what part of the entire tract sold, had been seized under the first writ, the whole sale was necessarily void for uncertainty; and this defect, it will be found, is not cured or remedied by any of the deeds executed by the sheriff to the purchaser, for they are obnoxious to the same objection as the return to the *venditioni exponas.*

In 2 *Harr. & Gill,* 345, this court has said, a sheriff cannot sell what has not been levied upon; and in 2 *Bacon's Abr. Tit. Execution, letter N.,* it is said, the sheriff must actually seize the property on a *fieri facias,* before he can sell; and that a valid seizure is essential to the title of the purchaser at the sheriff's sale.     See also 2 *Baley's Rep.* 361, where the principle is stated to be, that a levy made after the *term* to

which an execution is returnable is void, and vests no title in the sheriff or his vendee. The same principle is stated as law in 2 *Tidd's Practice* 1046, where it is said, the goods being once seized, and in custody of the law, they cannot be seized again by the same or another sheriff, and if they were seized under a second execution, and sold thereon, the bargain would be void. In support of this principle *Tidd* referred to a decision of *J. Holt,* to be found in *Shower's Reports,* 174. The ground of the decision is, that the second seizure would be void, the goods being in the custody of the law, and being void, the sheriff would have no authority to sell, and of course the purchaser could acquire no title at his sale. These cases we think satisfactorily establish the doctrine laid down by this court, in 2 *Harr. & Gill* above referred to, that unless there be a valid seizure, a purchaser at a sheriff's sale can acquire no title. It was not the intention of this court to impugn or call in question this principle, in the case of *Estep and Hall's Lessee, vs. Weems,* 6 *Gill and John.* 303. In that case it was only intended to decide, that it was not incumbent upon the purchaser to prove a legal seizure to entitle him to recover in an action of ejectment; he had a good title *prama facie,* without such proof on his part, to enable him to support his action; and if the language of the opinion in that case, is broad and general enough to carry the principle to a greater extent, it must be understood to be limited to the proof, which it was incumbent upon the purchaser to make in the first instance, to entitle him to recover. With this necessary qualification, the terms used ought to be understood. The tract of land called *Friendship,* being the only land embraced in the deeds impeached as fraudulent in this case, corresponding in name with those levied on by the sheriff, and the seizure having been only of a part of that tract, without defining the part so seized, and there being nothing in the sheriff's deeds or return of the sale made of that land, under the *venditioni exponas,* to cure such defective seizure, it follows as a necessary consequence, that the complainant acquired no title at that sale, to any land which was affected or prejudiced by such deeds, and

that he had no standing in the court to impeach or call their validity in question. If we are correct on these views, it necessarily follows, that the decree below sitting them aside as fraudulent and void, so far as his interest was affected by them, was erroneous, and that the same must be reversed.

DECREE REVERSED WITH COSTS.