JOHNSON ELLIOTT and MARY J. ELLIOTT his Wife's Lessee, *vs.* JAMES K. KNOTT.

Execution was issued upon a judgment more than three years from its date, and *after the death* of the defendant, and without revival by *sci. fa.*, under which the land of the deceased defendant was levied on, and sold at sheriff's sale, and purchased by the *plaintiff* in the judgment. Many years afterwards, the defendant's heir at law, *who was an infant* at the time of the execution and sale, brought *ejectment* for the land. HELD:

That the execution, so issued, was *voidable* and not *absolutely void*, and the purchaser, therefore, acquired a valid title to the land.

Courts of justice guard and maintain, with jealous vigilance, the titles of purchasers acquired under judicial sales.

The question of irregularity, in the issuing of a writ of execution, can never be discussed collaterally in another suit.

To enable the sheriff to sell land, and vest a valid title in the purchaser, a seizure is indispensable, and, without a valid seizure, the purchaser acquires no title.

The names *"Penryn"* and *"Pennyrine,"* in the absence of all proof to show that they belong to different tracts of land, should be regarded as' applicable to the same, and as *idem sonans*.

APPEAL from the Circuit Court for Saint Mary's County.

*Ejectment* brought on the 16th of July 1852, by the appellants, against the appellee, for a tract of land called "*Pennyrine*," containing two hundred acres. Plea, *non cul.*

1*st Exception.* The plaintiffs proved that the land in controversy was originally in the possession of the widow of

16     v. 14.

Charles Llewellin, as the guardian of her children, and was owned and occupied by them: that there were at first five children, but all the others died without issue, leaving John Llewellin and William H. Llewellin, the two survivors, the latter of whom also died without children, and the former died in possession of the land, on the 24th of November 1826, leaving a widow and a posthumous child, born on the 12th of January 1827, and who afterwards married the plaintiff, Johnson Elliott. They then, for the purpose of showing that John Llewellin had purchased the interest of William H. Llewellin in said land, offered in evidence the record of a judgment recovered against William H. Llewellin, in St. Mary's county court in 1822, and execution issued thereon on the 5th of May 1825, and the return thereto, by which it appears that the tract of land called *"Pennyrine,"* containing two hundred acres, more or less, was levied on and sold on the 19th of July 1825, at sheriff's sale, to John Llewellin, for $800. They further proved, that Francis Knott, the defendant's father, at the time of John Llewellin's death, lived about two miles from the latter's residence, but that said John died at the head of the bay, about six miles from the residence of said Knott, and then rested.

The defendant proved that from 1844, after the death of F. Knott, who died in 1843, the defendant, as his only child and heir, took possession of, and claimed title to, the land in controversy, by virtue of a purchase by said F. Knott, under judicial sale in 1829, under execution issued the 14th of October 1828, against William H. Llewellin, John Llewellin, and others, *"it being conceded that the land sold under the said execution is the same land in controversy in this suit,"* and for the purpose of deducing his title through them, offered in evidence certain documentary proof, consisting of the record of the judgment, and writs of execution, and the returns thereto.

This proof shows that an action of debt was brought by Francis Knott against William H. Llewellin, on the 15th of July 1822, in which a judgment was confessed in favor of the plaintiff, in St. Mary's county court, on the 6th of August 1823, for $295.83⅔, with interest from the 27th of November 1821,

Elliott and Wife's Lessee *vs.* Knott.

and costs; that on the 29th of September 1823, this judgment was superseded by a supersedeas judgment to said Knott, confessed before two justices of the peace, by William H. Llewellin, John Llewellin and Gustavus Brown, enforceable on the 29th of March 1824, and filed in the county court; that on this supersedeas judgment an appeal was taken to the Court of Appeals, and on the 16th of July 1825, this judgment was affirmed by that court and judgment rendered as in the county court; that on the 14th of September 1825, the said William H. Llewellin, John Llewellin, Gustavus Brown, together with Richard H. Miles and Thomas Brown, confessed another supersedeas judgment to Francis Knott, before two justices of the peace for St. Mary's county, for the amount of the original judgment, with the additional costs recovered in the appellate court, which was filed in the Court of Appeals on the 22nd of October 1825, and was due on the 14th of March 1826; that on the 18th of April 1826, two writs of *fi. fa.* were issued out of the Court of Appeals on these judgments, the one against William H. Llewellin, John Llewellin and Gustavus Brown, and the other against the same parties and Richard H. Miles and Thomas Brown, both returnable to the succeeding June term of that court, and both were levied upon a tract of land called *"Penryn,"* containing two hundred acres more or less, and returned, "on hand by consent." And on the 22nd of December 1826, two corresponding writs of *vendi exponas* were issued returnable to the following June term of the Court of Appeals, to which the sheriff made return, that the land called *"Penryn,"* which had been taken under the writs of *fi. fa. had been sold under an elder judgment;* that on the 14th of October 1828, two other writs of *fi. fa.,* on these same judgments, were issued out of the Court of Appeals, *tested* the 9th of June 1828, and returnable to the following December term of that court, one of which was also against William Llewellin, John Llewellin and Gustavus Brown, and the other against the same parties and Richard H. Miles and Thomas Brown, and the return to each was: "Laid as per schedules, and land sold to Francis Knott, the 28th of November 1828, for $550, and plaintiff satisfied as

receipt." The schedule referred to in the return to the first writ, describes the land as "one tract or parcel of land called *Penneyrun,* containing one hundred and sixty acres, more or less;" and the other schedule describes it as "one tract or parcel of land called *Penyrun,* containing one hundred and sixty acres, more or less."

To the admissibility of the aforegoing records, for the purpose of showing that any of John Llewellin's title to the land in controversy, passed by the sale under such executions, the plaintiff's objected, and insisted, that John Llewellin *being dead before* the issue of the executions aforesaid, no title could pass to the purchaser by such sale as against the said child of John Llewellin, but the court (THOS. F. BOWIE, Special Judge) overruled the objection, and permitted said records to be given in evidence for the purpose of showing title in the defendant's father and ancestor, F. Knott, and to this ruling the plaintiffs excepted.

*2nd Exception.*—Upon the evidence contained in the aforegoing exception, made part of this, the defendant prayed the court to instruct the jury, that under the pleadings in this cause, and upon the evidence before them, if they find the evidence to be true as stated, the plaintiff was not entitled to recover. This instruction the court granted, and the plaintiffs excepted, and the verdict and judgment being in favor of the defendant, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON. and BARTOL, J.

*Daniel Clarke* and *Thos. G. Pratt,* for the appellants, argued that the court below erred in its ruling in the first exception.

1st. Because the sheriff cannot legally sell any other than the land levied on by him, and that the sheriff, in this case, having levied upon a tract of land called *"Penneyrun"* or *"Penyrun,"* could not legally sell, or, by *his sale, pass title* to a tract of land called *"Pennyrine,"* there being no evidence in the record, that the land sold was the land levied on by

him. To enable a sheriff to sell land and vest a valid title in the purchaser, a seizure is indispensable, and without a valid seizure the purchaser acquires no title. 11 *G. & J.,* 37, *Waters vs. Duvall.* 12 *G. & J.,* 455, *Miles vs. Knott.*

2nd. Because, although we do not deny, that when an execution is issued, after the lapse of three years from the rendition of the judgment, or where it is issued upon a judgment subsequently reversed, and in like cases, such executions have been held *voidable,* and that sales by the sheriff, under such executions, to *bona fide* purchasers, *not parties* to the judgment, have been held to pass the title, yet we insist, that *even* in the case of *voidable* process, this principle does not apply to parties to the judgment who are necessarily cognizant of the irregularity of the execution, and consequently, that where, as here, the plaintiff is himself the purchaser, under the voidable execution issued by himself, the sale made under such process would be set aside at any time, if the party injured has used due diligence in instituting the necessary legal proceeding to that end, and we insist, that such a purchaser will not be permitted to set up his title, under such sale, to defeat the claim of a party whose land was sold, to recover possession of his land. We agree that voidable process stands good until reversed, and we say that it can only be reversed on the application of a party to the suit. We agree, therefore, that a *stranger* who becomes a purchaser will be protected, because when his title was acquired the execution was valid, and because he should not be affected by subsequent acts over which he (not being a party to the suit) could have no control. 8 *Johns.,* 361, *Jackson vs. Bartlett.* 1 *Cowen,* 737, *Woodcock vs. Bennet.*

3rd. Because although lands in Maryland, by the *Stat.* of 5 *Geo.,* 2, *ch.* 7, *in the hands of the debtor,* are equally liable with his personalty for the payment of his debts, we insist, that *after the death of the debtor,* his personalty is primarily liable for his debts; that where a debtor dies before execution issued, the creditor can enforce his judgment against the land of his deceased debtor only by one of two methods, viz: he may either bring *scire facias* against the heir and obtain *fiat*

against him to bind the lands which had descended, and thus obtain the right to have an execution and sell such lands, in which event the heir would have his remedy over against the executor to be reimbursed, or the creditor may file a bill in chancery for the sale of the land, in which event he must allege and prove the inadequacy of the personal estate. *Act of 1785, ch. 72, sec. 5.  3 G. & J.*, 367, *Hanson vs. Barnes. 4 Gill*, 11, *Doub vs. Barnes.  3 Bland,* 28, 44, *Tessier vs. Wyse.  4 Gill,* 268, *Warfield vs. Brewer, et al.*

4th. Because the execution under which the appellee claimed was issued upon a judgment in which he was then plaintiff, and William H. Llewellin, John Llewellin *and others* were defendants, and we insist, that John Llewellin being dead before execution issued, the *fi. fa.* could only be levied upon the property of the survivors, and consequently that the sale, under which the appellee claimed title, did not affect the rights of the heir of the dead defendant, John Llewellin.    8 *Sergt. & Rawle,* 456, *Commonwealth vs. Miller's Adm'rs.* 16 *Sergt. & Rawle,* 416, *Huston vs. Mateer.  1 H. & G.,* 308, *M'Elderry vs. Flannagan.*

5th. Because the appellee could acquire no title to the land of which John Llewellin died seized and possessed, and which had descended to his *infant* child, under a *fi. fa.* issued *after the death of the ancestor and the descent to the child.* Where the inheritance or freehold is to be affected, the tenant of the freehold must be made a party.   We insist that the *fi. fa.* was *absolutely void* in so far as it was designed to affect the rights of the heir of the dead defendant.   The term *voidable* implies, that there is a party who may *avoid.* The *infant* heir, to whom the land had descended, was a stranger to the judgment and execution, and *had no day in court* to show that the process was either voidable or void, (1 *H. & McH.,* 67, *Digges' Lessee vs. Beale,*) and the result of the reasoning on the other side would be, to make process, which they agree is voidable, absolutely valid, and impossible to be avoided. There is a manifest reason why an execution against a dead defendant should be void, which does not apply to the case of an execution issued after the lapse of three years, and the

Elliott and Wife's Lessee *vs.* Knott.

similar class of cases where the *fi. fa.* has been held to be voidable only. In the latter class of cases the defendant himself is alive, and has the privilege, if the voidable process has worked an injury to him, to set it aside, or if the sale is beneficial to him to let it stand; but where the defendant is dead, his infant heir has no such power, and in this case she could, in no conceivable way, move to quash the execution, and she would be absolutely without remedy where *her lands* are seized and held under a voidable execution, in a case to which she was no party. We submit, that the case in 8 *Johns.*, 361, referred to on the other side, settles that the regularity of the *fi. fa.* is only voidable at the instance of the party *against whom* it issued, and is an authority for our position, "that where a person has no power to set aside the sale of his land under voidable process, it will be considered, as to him, void," or that the reverse of the proposition must follow, "that a sale under a voidable process is absolutely valid, *if the land of any other* than a party to the suit is seized and sold." The *dictum* in *Miles vs. Knott*, 12 *G. & J.*, 443, "that the irregularity of the issuing an execution cannot be discussed *collaterally* in another suit," we submit, is not properly appreciated by the other side. The very term *"collaterally"* implies, as used in the case referred to, that the party to whom the principle is applied had the power, but had neglected to exercise it, of making the objection *directly*. If an execution against A be levied upon the goods of B, the goods cannot be replevied of the sheriff, and the remedy of B is, after the sale, to replevy of the purchaser, and this is the case of a regular execution. The reason is, that having no power to take his goods from the sheriff, or to quash the *fi. fa.*, being no party he necessarily has the power to avoid the sheriff's sale *collaterally* in the manner indicated. 7 *H. & J.*, 60, *Cromwell vs. Owings.* We insist, that the decisions in Pennsylvania, referred to on the other side, are not applicable in this State, even if they supported (and we think they do not) the broad proposition for which they are cited. In that State there is no chancery court, and the plan adopted to make lands answerable for judgments is, to bring *sci. fa.* against the execu-

tors and administrators. 4 *Watts*, 375. 16 *Sergt. & Rawle*, 419. The case of *Jackson vs. Robins*, 16 *Johns.*, 577, in so far as it maintains the position for which it is cited by the appellee's counsel, is a mere *obiter dictum;* in fact a *scire facias* had issued against the terre-tenants; and besides, that case has been ably reviewed and expressly reversed in *Woodcock vs. Bennett*, 1 *Cowen*, 738 to 740, where the learned judge says: "Independent of adjudged cases, on the distinction of *void* and *voidable* process, it seems to me, that to sanction such a proceeding would be an invasion of one of the great principles upon which our security depends, under a government of laws; that no person shall be put out of his freehold, or lose his goods and chattels, unless he be duly brought to answer or be 'fore-judged of the same by due course of law. It is undoubtedly in support of this principle that the cases hold a decided and unequivocal language, not that in case of the death of a defendant after judgment, the plaintiff *may* or *must* issue a *scire facias*, but as in 2 *Saunders*, 6, *note* 1, *he cannot have executions against the defendant without a scire facias*. So also in 6 *Bac.*, 112, *Tit. Scire Facias*, it is laid down, that one who is no party to the record or judgment shall have *no writ of execution*, but a *scire facias*, "*for the alteration of the person altereth the process.*" The case of *Trail vs. Snouffer*, 6 *Md. Rep.*, 308, was the case where an execution was issued after the death of the *plaintiff*, and was held voidable only; that is, voidable at the pleasure of the defendant. In principle, there is no distinction between such an execution and those where the three years had expired before execution issued. The representatives of the deceased plaintiff had no other interest in the execution than to get their money due on the judgment, and the defendant, who was *alive and a party to the judgment*, could consequently avoid the voidable process, if it was his interest to do so. We refer to the following cases and authorities, in addition to those already cited, as fully sustaining the position, that this process was *absolutely void*, and passed no title to the purchaser thereunder. *Fitzherbert N. B.*, 267. 4 *How.*, 58, *Erwin's Lessee vs. Dundas, et al.* 13 *How.*, 294, *Taylor vs. Doe.* 16 *Mass.*, 191,

*Hildreth vs. Thompson.* 10 *Wend.*, 206, *Stymets vs. Brooks.* 4 *Iredell*, 377, *Samuel vs. Zachery.* 4 *Ala.*, 679, *Lucas vs. Price.* 7 *Ala.*, 660, *Holloway vs. Johnson.* 15 *Ala.*, 417, *Hurst, et al., vs. Weathers.* 27 *Ala.*, 291, *Collier vs. Windham.* 2 *Ohio*, 290, *Massie's Heirs vs. Long, et al.* 5 *Ohio*, 221, *M'Cartney vs. Reed.*

The court below also erred in granting the prayer in the second exception.

1st. Because it is too general. *Act of* 1825, *ch.* 117. 3 *G. & J.*, 369, *Penn vs. Flack.* 9 *Gill*, 461, *Cook vs. Duvall.*

2nd. Because it instructs the jury to find for the defendant, although they might believe from the evidence, that the sale was fraudulent for gross inadequacy of price or otherwise.

*Oliver Miller* and *Robt. J. Brent*, for the appellee.

The question presented by the first exception is that upon which the decision of the case must depend. The plaintiff, Mary Jane Elliott, claims title to the property as heir at law of John Llewellin. The appellee claims title as heir at law of Francis Knott, who purchased the land at sheriff's sale on the 28th of November 1828, under an execution issued out of the Court of Appeals on the 14th of October 1828, against William H. Llewellin, the defendant in the original judgment, and John Llewellin and others, superseders in the supersedeas judgments appealed from and affirmed in the Court of Appeals.

The court will perceive that the record in this case is almost identical with that in *Miles vs. Knott*, 12 *G. & J.*, 442. In the second exception in that case it was objected, in the court below, that the *fi. fa.* of the 14th of October 1828, having been issued more than three years after the date of the supersedeas judgment, was *null* and *void*, and the purchase thereunder vested no title to the land in the purchaser, the judgment being dead in law and not having been revived by *scire facias.* The Court of Appeals in considering this exception say, (12 *G. & J.*, 453:) "No execution could rightfully issue on the judgment without a *sci. fa.* to revive it.

17      v. 14.

Could a title pass to a purchaser under an execution thus issued? This depends on the solution of the question, whether the execution is *voidable* or *void.* If the latter, clearly no title would pass. But if the former, the purchaser acquires a title. That the process is only *voidable* is abundantly established by many authorities, which will be found referred to in the opinion of Chancellor Kent, 16 *Johns.,* 575, 576, and he there says, that the question of *irregularity* can never be discussed *collaterally* in another suit; and to the same effect will be found 8 *Johns. Rep.,* 361.''

The question presented in this case is whether these same executions of the 14th of October 1828, and the purchase thereunder, are *null and void* by reason of the *death* of John Llewellin *prior* to their *test* and *issual,* or are they *voidable* only? The case above cited conclusively settles the law, that where execution is issued after a year and a day at common law, or three years under our Act of 1823, ch. 194, from the date of the judgment without a *sci. fa.,* the process is *voidable* only and not *void,* and the purchaser takes a title. The rule in regard to writs of *sci. fa.* is: ''That where a *new person,* who was not a party to a judgment or recognizance, derives a *benefit* by, or becomes *chargeable* to, the execution, there must be a *scire facias* to make him a party to the judgment.'' 2 *Saund.,* 6, *note* 1. This applies as well to the death of a *plaintiff* as of a *defendant.* The reason assigned is, that the representatives of the deceased defendant, in the one case, may be able to show a payment of the judgment, or a release of the execution, and the law presumes, in the other, that the debt might have been paid to the deceased plaintiff. 8 *Bac. Abr.,* 605. 2 *Saund.,* (72 *p.*) ''The reason why the plaintiff is put to his *scire facias* after the year, is, because where he lies by so long after his judgment, it *shall be presumed* that the judgment is executed or that the plaintiff has released the execution, and therefore the defendant is not to be disturbed without being called upon and having an opportunity of pleading that the judgment is executed, or the release, or showing other cause, if he can, why execution should not issue against him.'' 2 *Saund.,* 72 *(d.)* The court will thus see, that the reason for

Elliott and Wife's Lessee *vs.* Knott.

requiring a previous *sci. fa.* in the case of the *death* of *either* party to the judgment, is the *same* as in the case of the lapse of the year and a day, and the natural, and indeed the inevitable conclusion would seem to be, that a *fi. fa.* sued out, without such *scire facias*, ought to be of as much force in the one case as in the other; if *voidable* only in the one case, it ought not to be *absolutely void* in the other.

But the authorities are directly in point. In *Jackson vs. Robins*, 16 *Johns.*, 577, referred to and adopted by the Court of Appeals in 12 *G. & J.*, 453, Chancellor Kent, delivering the unanimous opinion of the Court of Errors, after referring to the cases in which an execution issued after the year and a day was held to be voidable and not void, adds: "But it is said these were cases of executions issued after a year and a day, and not after the *death of the party*. I do not know however that such a circumstance makes any difference in the application of the rule. The presumption that the judgment is satisfied is no stronger when the parties are changed by death, than when the creditor has suffered the judgment to sleep." He then refers to the case of *Heister vs. Fortner*, 2 *Binney*, 40, where "a judgment was obtained in 1789, by A against B, and some years afterwards A died, and his executors issued execution on the judgment in 1797, after a *scire facias* issued and *one nihil* only returned, which *was as no summons* either in law or in fact, and sold the land. The court held that the judgment and execution on such a *scire facias* might be set aside for irregularity or reversed on error, but that neither the error nor the irregularity could be noticed in that eject-ment suit. Here then we have the same doctrine when one of the parties was changed by death, and it shows that there is in such a case *no variation in the principle*." The same doctrine is most distinctly announced by the same distinguished jurist, speaking for the whole court in *Jackson vs. De Lancy*, 13 *Johns.*, 549, 550. In the case of *Speer vs. Sample*, 4 *Watts*, 367, the Supreme Court of Pennsylvania unanimously decided, that, "An execution issued upon a judgment after the death of the defendant is not absolutely void but only void-able, and a sale of land upon such execution vests in the pur-

chaser a good title.'' The whole question is there discussed most elaborately, and with great perspicuity and force of reason, by Judge Kennedy, who delivered the opinion of the court in that case, and the decision is based upon the principles of the common law, without reference to any peculiarity in the laws of that State. See also 4 *Whart.*, 339, *Day vs. Sharp*. The decisions in Mississippi are to the same effect. 2 *How.*, 601, *Smith, et al. vs. Winston*. 5 *How.*, 256, *Drake vs. Collins*. 23 *Mississippi*, 496, *Shelton vs. Hamilton*.

But whatever may be the decisions in other States, we think the question is settled in this State by the decision of this court in the case of *Trail vs. Snouffer*, 6 *Md. Rep.*, 308. That was a case of a *motion* to quash a *fi. fa.* upon its return, and one of the grounds upon which the motion was based, was, that it issued on a day when Trail, the legal plaintiff, was dead. The court, while sustaining this reason on this *motion*, and holding that the objection was taken in proper time and in the proper form, say: ''It is equally true that where a new party is to be *charged* or *benefitted* after judgment, a *scire facias* must issue. But as in the former case the objection must be raised in due season, The fact of the party's death can never be alleged to impeach the judgment: but irregularity in reference to writs of *fi. fa.* can be shown on motion. The objection goes only to the fact that the plaintiff was dead when the writ issued, not denying that in contemplation of law he was alive when the judgment was rendered. Here the objection was presented at the *proper time* and in the *proper mode*.'' This is a distinct decision that the objection to a *fi. fa.*, for the want of a previous *sci. fa.* in case of the *death* of a party, must be made in *due season;* that it is but an *irregularity.* But if the process is *void*, every season is a due season in which to take advantage of it; it is a *nullity* instead of an *irregularity*, and no regard need to be paid to it in any case, whether it comes up directly or incidentally and collaterally in another suit. The decision of this case of *Trail vs. Snouffer*, is wholly inconsistent with the idea that the process was absolutely void.

It is urged on the other side that the plaintiff was an *infant*

at the time these writs issued, and had no *day in court* to show cause, or move to set them aside. But while the courts are careful to protect the rights of infants, they guard with no less vigilance the rights of *purchasers* under judicial sales. In *Tomlinson's Lessee vs. Devore*, 1 *Gill*, 345, it was held, that upon a judgment, execution and sale, the title to land passed, though the *defendant* in the judgment was a *lunatic at the time of its rendition;* and in *Manahan, et al., vs. Sammon*, 3 *Md. Rep.*, 463, it is said, that judicial sales are *always* favored by courts. In *Bennett vs. Hamill*, 2 *Sch. & Lef.*, 566, cited in *Jackson vs. Robbins*, it was held that a purchaser's title was not affected by the fact that the decree under which he purchased was irregular and erroneous, because the defendant, being an *infant*, had *no day* given him by the decree, after he came of age, to show cause against it. It is further to be considered, that the judgment in this case was a *lien* upon the land of John Llewellin, valid, subsisting and continuing for twelve years from its rendition, following the land into whosesoever possession it went, whether by *descent* or alienation, and that if a *scire facias* had been issued to revive it, the *infancy* of his heir at law would have been no obstacle to the obtention of a *fiat*.

If we are right in the position thus taken, that this process was *voidable* and not *void*, the other questions in the case are of little importance. For instance, the objection that the prayer in the second exception is too general, cannot avail to reverse the judgment: for it is certain that if the sale under the execution passed a valid title to the purchaser, the appellants cannot recover, and they have not therefore been injured by the granting of this prayer, even if it be conceded to be erroneous.

Another objection is, that there is no evidence that the land *sold* was the land *levied* on by the sheriff under these executions. But this we think is a mistake, as an examination of the record will show. The *declaration* is for a tract of land called *"Pennyrine."* The *returns* to these executions show that the sheriff levied upon a tract of land called *"Penneyrun"* or *"Penyrun,"* and *sold the same* to F. Knott; and it was *conceded* that the land *sold* under these executions is the

*same land* in controversy in this suit. The sheriff's *return* is evidence of what land he *seized* and *sold,* and it being *admitted* that the land *sold* was "*Pennyrine,*" the return shows that the *same land* thus admitted to be the same as "*Pennyrine,*" was *seized* by the sheriff.

LE GRAND, C. J., delivered the opinion of this court.

We regard the principal question involved in this case as having been settled by the decision pronounced in *Miles vs. Knott's Lessee,* 12 *G. & J.,* 443. The only difference, so far as the rights of the parties are concerned, between that case and this, if any, consists in the fact, that there was no question of infancy in that case, whilst there is in the present one.

We think this circumstance unimportant. In that case the court fully adopt the doctrine of the case of *Jackson vs. Robbins,* 16 *Johnson,* 582, which approves of the principle enforced by Lord Chancellor Redesdale, in the case of *Bennett vs. Hamill,* 2 *Sch. & Lef.,* 566; and the same affirmation is given to it in *Manahan & Gorman vs. Sammon,* 3 *Md. Rep.,* 471. The substance of the opinion of Lord Redesdale, on this point, is thus given by Chancellor Kent: "A man died leaving a widow and an infant son, and his judgment creditors, in collusion, as was supposed, with the widow, filed a bill in chancery to have the infant's estate sold, and the widow appeared for herself and as guardian for her infant son, and a decree was obtained. Under that decree certain freehold and leasehold premises were sold, which came by purchase, for a valuable consideration, to the defendant, who expended large sums in improvements. When the infant came of age, he filed his bill to set aside the decree and sale under it, as irregular and erroneous, and one ground of the allegation was, *that he had no day given him by the decree, after he came of age, to show cause against it.* The chancellor admitted that there were irregularities in the proceedings, which he pointed out, and that the decree was erroneous, inasmuch as the infant ought to have had a day to show cause against the decree when he came of age. *But he held that this was not to affect the purchaser's title.* It would

be too much, he thought, to say, that a purchaser, under a decree of that description, could be bound to look into all these circumstances, and go through all the proceedings from the beginning to the end." In the case of *Tomlinson's Lessee vs. Devore,* 1 *Gill,* 345, it was held, that upon a judgment, execution and sale, the title to land passes, though the defendant in the judgment *was a lunatic* at the time of its rendition, courts of justice guarding and maintaining with jealous vigilance the titles of purchasers acquired under judicial sales. Although, as authority, the case in 16 *Johnson* has been questioned elsewhere, it is the law of this State, and particularly of this case; the reason on which it rests is recognized in *Trail vs. Snouffer,* 6 *Md. Rep.,* 308. See also 23 *Mississippi,* 496.

There is no doubt, that to enable the sheriff to sell land, and vest a valid title in the purchaser, a seizure is indispensable, and that without a valid seizure the purchaser acquires no title. *Waters, et al., vs. Duvall,* 11 *G. & J.,* 37. But this principle, in our judgment, ought not to have any disastrous influence on the title of the appellee. We think the names "*Penryn*" and "*Pennyrine*" should be regarded, in the absence of all proof to show they belong to different tracts of land, as applicable to the same, and as *idem sonans.*

Although we are of opinion the prayer granted by the court is too general in its language, we yet affirm the judgment, because it is manifest the appellants could derive no advantage from a *procedendo,* the real and substantial question being the validity of the title of the defendant.

*Judgment affirmed.*

Eccleston, J., dissented.

(Decided July 15th, 1859.)