OSCAR TRAIL, use of KEMP and BUCKEY, use of JACOB M. BUCKEY, vs. JOHN B. SNOUFFER.

A judgment of *fiat* upon a *scire facias* issued in the name of the legal plaintiff for the use of the equitable plaintiffs is valid, notwithstanding the legal plaintiff was dead at the time the *fiat* was entered.

But where a *fi. fa.* on such judgment is issued in the name of the legal plaintiff, the objection may be taken on motion to quash the writ on its return, that such plaintiff was dead when it issued, and the writ will be quashed; such objection is made at the proper time and in the proper mode.

A *fi. fa.* cannot be enforced in the name of a deceased plaintiff, if the fact of his death at the date of the writ is relied upon against its validity upon its return.

At common law a judgment cannot be obtained where either party has died if the objection be taken in due time, but if not then made, the judgment concludes all persons from denying the fact of the party's existence at the *time of its entry.*

Where a new party is to be changed or benefitted *after* judgment, a *scire facias* must issue, but in such case also the objection must be made in due time.

The act of 1852, ch. 180, sec. 4, operates *per se* upon all writs defective in the particulars therein indicated, and makes them valid, subject however to the rights of creditors and purchasers, who became such *prior* to its passage.

This act affects all parties, except *prior* creditors and purchasers, with notice of the rights of parties claiming under the defective writs, as fully as if they claimed under process valid at the time of its passage.

A trustee of an insolvent claiming under the deed in insolvency, executed *after* the passage of this act, is not protected by the *proviso* thereto, even if he be considered a purchaser within its terms.

Under the insolvent system of this State, as it stood at the adoption of the present constitution, *arrest for debt* was not necessary to entitle a person to its benefits, and hence that system was not abolished by that clause of the constitution which declares, there shall be no imprisonment for debt.

APPEAL from the Circuit Court for Frederick county.

This was an appeal taken by the appellant, Jacob M. Buckey, from an order of the court below (NELSON, J.,) overruling a motion made by him to amend a writ of *fieri facias,* and also from the judgment of said court making absolute a rule obtained by the insolvent trustee of the appellee to quash said writ. The facts of the case are fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLE-
STON and TUCK, J.

*Joseph M. Palmer* for the appellant.

1st. It is insisted that the circuit court erred in discharging
the rule of the appellant, and refusing to direct the mistake or
misprision of the clerk in issuing the *fi. fa.* to be corrected
and the writ amended. The mistake occurred in this way:
An act of the legislature of 1852, ch. 13, changing the terms
of the circuit court for Frederick county from the first to the
second Monday in November, was passed on the 16th of
February 1852, but this law not having been *published*, the
clerk was ignorant of its existence at the time he issued the
writ, 9th of April 1852, and he therefore made it returnable
on the *first* Monday of November, as usual. But this error,
(if the court below had not the power to correct it, which we
insist they had,) is clearly cured by the express terms of the
act of 1852, ch. 180, sec. 4, passed on the 25th of May 1852,
unless the insolvent's trustee can be called a "*bona fide* pur-
chaser or creditor" under the proviso to that section. Snouffer
did not apply for the benefit of the insolvent laws until the
3rd of August 1852, *after* the passage of the act of 1852, ch.
180, and *after* the *fi. fa.* had been levied upon his property.
Every body was bound to take notice of this act, and there-
fore it cannot be said that this trustee was a purchaser *bona
fide*, having been appointed *after* its passage. As to the
construction of this statute, see *Dwarris on Statutes*, 716.
There is no evidence in the record to show that at the time of
the passage of the act of 1852, ch. 180, the said insolvent had
any *bona fide* creditors except the appellant, and if there were
any such creditors at that time, they must show *affirmatively*
that they are within the true meaning of the proviso to entitle
them to its benefit. That an appeal will lie from the order
refusing to direct the amendment, see 1 *H. & G.*, 404, *Union
Bank vs. Ridgely.* 1 *Gill*, 52, *Gordon vs. Downey.* 11
*Wheat.*, 302, *Chirac vs. Reinicker.*

2nd. The court below manifestly erred in deciding that the

writ of *fi. fa.* should be quashed and vacated by reason of the death of Trail, the legal plaintiff, who died after the rendition of the original judgment, and before the issuing of the *sci. fa.* and the judgment of *fiat.* The court below decided that the judgment *fiat* was a good, legal and valid judgment, and free from error, and from this ruling there was no appeal taken. Now the death of Trail should have been pleaded in abatement to the *scire facias,* and that not having been done, the objection or fact of death *cannot* be made available to Snouffer afterwards in *any possible way.* 1 *Comyn's Digest,* 65, *Abatement, (F. 2.)* 16 *Johns.,* 537, 579, *Jackson vs. Robins.* 1 *Chitty's Pl.,* 441. 6 *Randolph,* 110, *Garrand vs. Henry.* *Hobart's Rep.,* 283, *Hannor vs. Mase,* and *note* 1.

3rd. But Archibold T. Snouffer has no standing in court to make any objection to this judgment or writ, because he is not the *legal* trustee of the insolvent petitioner, John B. Snouffer. All the proceedings in the case of this application purporting to be made under the provisions of the insolvent laws of 1805, ch. 110, and the supplements thereto, are *coram non judice* and void, because the whole insolvent system of 1805 and its supplements was abolished by virtue of the provision in the present constitution of the State, declaring that there "shall be no imprisonment for debt." The *first step* under these old insolvent laws upon the part of the applicant, is to show that he is *in custody* or actually under *arest* for debt, and the writ of *ca. sa.* having been abolished there can now be no such *arrest,* and hence these laws are now abrogated and annulled.

*William M. Merrick* for the appellee.

1st. In refusing leave to amend the *fi. fa.* the court was acting within the sphere of its *discretionary* power, and no appeal will lie from *such* ruling, and hence this appeal should be dismissed. 6 *H. & J.,* 151, *Hawkins vs. Jackson.* 7 *H. & J.,* 454, *Carroll vs. Barber.* 2 *H. & G.,* 81, *Wall vs. Wall.* 7 *Gill,* 237, *Crockett vs. Parke.* 2 *Lord Raymond,* 1061, *Reg. vs. Tuchin.* 3 *Greenlf's Rep.,* 183, *Wyman vs. Dorr.*

*Ibid.*, 219, *Clapp vs. Balch*. 9 *Wheat.*, 576, *Walden vs. Craig*. 11 *Do.*, 280, *Chirac vs. Reinicker*. 3 *Pet.*, 12, *United States vs. Buford*.

2nd. The defect in the writ is not cured by the act of 1852, ch. 180. Under the act of 1804, ch. 55, the writ must be returned on the *first* day of the term, and a *fi. fa.* returnable in vacation is *void*, and *void* process cannot be corrected. 3 *G. & J.*, 385, *Turner vs. Walker*. 2 *Johns.*, 190, *Bunn vs. Thomas*. 4 *Do.*, 309, *Burk vs. Barnard*. 1 *H. & J.*, 8, *West vs. Hughes*. Now by the act of 1852, ch. 180, the courts have not power to *amend* a void writ, but it says that executions shall be *ruled* valid notwithstanding mistakes in the return day. This implies that the act does not *per se* make the writ good, but that there must be a *rule* laid in each case by the court to show cause why the writ should not be ruled valid. But the proviso to this act is not confined to creditors or purchasers *antecedent* to the passage of the law. The law in England and in all the States is, that in the exercise of their discretionary power over amendments courts never allow them to be made to the detriment of rights intermediately acquired, and the highest equity being the fair and equal distribution of assets among creditors, they will never grant an amendment which will operate to disturb that equality of distribution by assignees in bankruptcy or trustees in insol-vency, but leave the party to the consequence of any inadver-tence. 6 *G. & J.*, 217, *State vs. Bank of Maryland*. 14 *Johns.*, 219, *Bank of Newburgh vs. Seymour*. 6 *Term Rep.*, 10, *note a*. 8 *Do.*, 153, *Paris vs. Wilkinson*. 3 *Pick.*, 445, *Putnam vs. Hall*. 9 *Do.*, 167, *Emerson vs. Upton*. 6 *New Hamp.*, 459, *Bowman vs. Stark*. 8 *Mass.*, 240, *Williams vs. Brackett*. 3 *Greenlf's Rep.*, 260, *Freeman vs. Paul*. 7 *Do.*, 146, *Means vs. Osgood*. 4 *Maule & Selw.*, 329, *Hunt vs. Pasman*. These cases are a key to the interpretation of the act of 1852, ch. 380. The courts never allow an unmerito-rious amendment. 4 *G. & J.*, 381, *State vs. Green*.

3rd. The *fi. fa.* was properly quashed, because at the time it *bore test*, as well as at the *time it issued*, the nominal plaintiff

was dead, and a new *sci. fa.* was therefore necessary, unless the assignee had caused the execution to issue in his own name, as he might have done under the acts of 1829, ch. 51, and 1830, ch. 165, sec. 2. Having used the name of the technical plaintiff he must take the consequence of not making his representative a party. The judgment of *scire facias,* bearing even date with test of execution, does not estop us from showing his death before test day. 3 *G. & J.,* 366, *Hanson vs. Barnes.* 2 *Wms. Saunders,* 72. 1 *Wils.,* 302, *Earl vs. Brown.* 2 *Do.,* 372, *Hewitt vs. Mantell.* 2 *Ld. Raymond,* 1280, *Colebeck vs. Peck.* 1 *Term Rep.,* 463, *Kretchman vs. Beyer.* The fiction of relation will not be accumulated upon the fiction of estoppel.

The objection that Snouffer's trustee has no standing in court because the insolvent laws were abolished by the new constitution, was not made in the court below, and the appellant is precluded by the act of 1825, ch. 117, from making it here. But if the question is open, we insist that these laws are not abrogated by the constitution.

TUCK, J., delivered the opinion of this court.

The facts on which this appeal comes before us, are these: Oscar Trail obtained a judgment, in 1845, against the appellee, which was entered for the use of Kemp and Buckey, and afafterwards for the use of Jacob M. Buckey. Trail died in 1848, after which a writ of *sci. fa.* was issued, *in his name,* for the use of the equitable plaintiffs, and no appearance having been entered by the defendant, a *fiat* was awarded in February 1852. A writ of *fieri facias* was issued on the 9th April 1852, in the name of the legal plaintiff, for the use of the other parties, as the *fiat* had been rendered; but this writ was made returnable to the first Monday of November, when the sittings of the court commenced on the second Monday of that month. In August 1852, after this *fi. fa.* had been levied on the defendant's property, he applied for the benefit of the insolvent laws, and Archibold T. Snouffer was appointed his trustee, to whom a deed was executed, and the party discharged. On the return of this writ of *fi. fa.,* the trustee filed

a motion to quash, on the following suggestions:—1st. That the *fi. fa.* is tested on a day when Trail, the legal plaintiff, was dead. 2nd. That the writ issued on a day when Trail was dead. 3rd. That the writ is made returnable on the *first* Monday in November, when the court was not in session. 4th. Is the same, substantially, with the third. 5th. That the *fiat* was obtained by surprise, and should be stricken out. Accompanying this motion, he filed a record of the proceedings in insolvency.

Subsequently, in the progress of the cause, the *cestui que use*, Jacob M. Buckey, appeared and moved for leave to amend the writ of *fi. fa.* by inserting the second Monday, instead of the first Monday in November, on the ground, that it was a mistake of the clerk.

The court discharged the motion to strike out the *fiat*, and, overruling the motion to amend the writ, made absolute the rule to quash it. From these last two rulings, the *cestui que use* appealed.

It is conceded, that the judgment on the *sci. fa.* is to be treated as valid, notwithstanding the legal plaintiff was dead at the time the *fiat* was entered. *Hawkins vs. Bowie*, 9 *Gill & Johns.*, 428. But one of the questions before us is, as to the validity of the writ of *fi. fa.* issued on that judgment.

It is unnecessary to inquire, whether the error as to the return day can be amended, because we consider that defect cured by the act of 1852, ch. 180, sec. 4, which provides: "That all writs of execution which have been issued out of any of the courts of this State, between the first Wednesday of November 1851, and the date of the passage of this act, shall be deemed regular, and ruled valid, notwithstanding errors or mistakes in the test day, in the return day, in the name of the proper judge, or in the style of the proper court; *provided*, however, that nothing in this section contained shall affect or in any wise impair the rights of a *bona fide* purchaser or creditor." This act took effect from the 25th of May 1852, the date of its passage.

We do not agree with the counsel for the appellee, that a special rule must be laid in each case to give effect to this act.

It operates, *per se*, upon all process defective in the particulars there indicated; and, in all contests relating to such writs, the courts must deal with them as if no such errors had occurred, subject, however, to the rights of creditors and purchasers, who may have become such before the passage of the act. As to all other persons, the act affects them with notice of the rights of others, as fully as if they claimed under process, valid at the time of the passage of the act. In this view of the case the proviso does not protect the appellee, claiming under the deed in insolvency, executed after the passage of the act, even if he be considered a purchaser within its terms.

But the appellee's counsel has presented another objection, which we think fatal to the writ of *fi. fa.* The cases referred to by the appellants' counsel, do not warrant the conclusion, that the fact of the plaintiff's death, before judgment, can never be afterwards inquired into for any purpose. It is true the judgment cannot be impeached on that ground, but it does not follow, that, in all time to come, the dead plaintiff is to be considered as alive. Upon technical grounds, the law treats the judgment as if the party was alive at the time it was rendered, and died afterwards. If it were otherwise, and the judgment was against a defendant who had died before the judgment, the plaintiff would be entitled to his execution against the property of a dead man, and, if imprisonment for debt had not been abolished, even against his person; because, if the law treats the judgment as having been obtained against a party *in esse*, and if, as now contended, the fact of his death can never be alleged for any purpose, there would be no more reason for denying the validity of the process in the one case than in the other. And, though the anomaly is not likely to occur, a proceeding on final process might be carried on in the names of parties to the judgment, both of them being dead. It is well settled, that at common law, a judgment cannot be obtained where either party has died, if the objection be taken in due time; but if not then made, the judgment concludes all persons from denying the fact of the party's existence at the time of its entry. There are exceptions by statute; (*Foster's Law. of Sci. Fa.*, ch. 5,) and by our acts of Assembly in reference

to the death of parties in this court. It is equally clear, that where a new party is to be charged or benefitted, after judgment, a *sci. fa.* must issue. *Hanson vs. Barnes*, 3 *G. & J.*, 359. But, as in the former case, the objection must be raised in due season. The cases referred to by the appellants' counsel have no application to the point in question. They are merely illustrations of the general doctrine, that the death of the plaintiff must be availed of before the judgment, by plea in abatement. How can that plea be used here? The fact of the party's death can never be alleged to impeach the judgment; but irregularity in reference to writs of *fi. fa.* can be shown on motion. The objection goes, only, to the fact that the plaintiff was dead when the writ issued; not denying that, in contemplation of law, he was alive when the judgment was rendered. Here the objection is presented at the proper time, and in the proper mode. The question was decided in *Earl vs. Brown*, 1 *Wils.*, 302, where a *fi. fa.* was quashed, on motion, because the plaintiff was dead at the time of the judgment, and it had not been revived by *sci. fa.* See also *Underhill vs. Devereux*, 2 *Saund. Rep.*, 72, *and notes;* and *Foster's Sci. Fa.*, *ch.* 5, (73 *Law Lib.*, 174,) where the subject is fully treated. It is certainly giving to the judgment sufficient efficacy, when the law allows it to be enforced as if the plaintiff had been alive on the day of its rendition, but died afterwards. The equitable plaintiff had his remedy, in his own name, under our acts of Assembly, but we can find no case in which a *fi. fa.* has been enforced in the name of a deceased plaintiff, where the fact of his death, at the date of the writ, has been relied upon against its validity, at the return of the process.

We do not understand that the clerk committed the error of issuing the *fi. fa.* in the name of the legal plaintiff. Without deciding whether the writ was amendable, it is clear that if it was not his misprision the party was not entitled to the amendment. For aught that appears to us the writ was issued according to the direction of the party. Nor do we express any opinion on the right of appeal from orders granting or refusing such amendments. On this subject see *Crockett vs. Parke*, 7 *Gill*, 237. *Shipley's Appeal*, 4 *Md. Rep.*, 493.

The appellee's right to avail himself of objections to the proceedings below, depends upon the validity of his appointment as trustee under the insolvent laws, which system, it is said, on the part of the appellant, was abrogated by the article of the present constitution abolishing imprisonment for debt. The point then, on which this part of the case turns is, whether it was necessary, under the insolvent laws, for the petitioner to show that he was under arrest, in order to entitle himself to their protection; for if that system applied only to those who were in that predicament, it cannot be said to exist when arrest for debt is prohibited by the constitution.

The act of 1805, ch. 110, is not restricted in terms to persons under arrest. The preamble does not assert that they were in confinement, but merely that they were unable wholly to pay their debts. Several of its sections indicate that the act was designed to comprehend all persons who might apply, whether under arrest and confinement, or not. The *second* authorises any of the persons named in the act to apply to the county court, or "to any judge: thereof in case of his actual confinement." The third relates to the residence of the applicant, and the assent of his creditors, but there is a proviso which dispenses with such assent, when the party was in actual confinement. Sections 11 and 13, also prescribed what was necessary, or might be done in case of the imprisonment of the petitioner, and among other things, bond was required for his personal appearance, which is not made necessary in any other condition of the party. The implication that persons not in confinement might have applied under these laws, is also supported by the acts of 1807, ch. 150, and 1808, ch. 71, which make special provision for debtors in prison at the time of their application. The twenty-first section of the original act, authorized the courts to extend the benefits of the act "to all such persons as might apply," before January 1810, which provision was further extended by the act of 1809, ch. 179, to all applicants, without limitation of the continuance of the act. The condition of the party did not affect his right to apply, further than by allowing the petitioner, in case of actual confinement, to be presented to a judge out of court. The

jurisdiction of the judges of the orphans courts, was by the act of 1817, ch. 183, confined to the release of imprisoned debtors; but by the act of 1827, ch. 70, application might be made to the county courts, or the judges thereof, or of the orphans courts, by any person having resided in the State two years. Residence is the only condition mentioned in this act, no reference being made to the arrest or imprisonment of the party.

We believe it to have been the common, though not universal, impression of the bar, that these laws applied only to debtors under arrest. This may have originated from the fact that few, if any voluntary applications were made; the discharges granted having been to persons who were compelled to avail themselves of the benefit of the acts; and the question having never been presented as a matter of controversy, had not received a thorough examination. A contrary opinion, however, we know to have been entertained by members of high standing in the profession. But the act of 1830, ch. 130, appears to have thrown doubt on the question, or rather to have obscured what was not quite clear before, by providing that it should not be necessary for the applicant "to produce any evidence of his confinement in jail." This act does imply, that such evidence was necessary before that time, but it is not expressly required in any of the previous acts. They require the court or judge to be satisfied of the party's residence, and at one time, of the assent of his creditors; but nothing is said about evidence of his arrest or confinement. If the system was designed to embrace only those who might be in that predicament, we presume such proof would also have been demanded by the law. We understand that before the act of 1830, the construction of these laws was not uniform in the several judicial districts, nor indeed, since its passage. In some, that act was taken to be a legislative construction, that under the previous acts, actual confinement was indispensable, and that arrest was necessary afterwards; while in others, it was construed as dispensing altogether with arrest as well as confinement, even if before the act arrest was necessary. The consequence was, that in the latter districts dis-

charges were granted to persons who were not under arrest at the time of their application, and, probably, valuable estates are now held under these proceedings.

This view of the act of 1830, is sustained, as we think, by the case of *Bowie vs. Jones*, 1 *Gill*, 208. It appears by the proceedings on that appeal, that the validity of Bowie's discharge was contested, because there was no proof of his confinement, which, it was said, was necessary to give jurisdiction to the court granting the discharge; to which it was answered, that since the act of 1830, arrest and confinement were not requisite. There was no evidence of the party's arrest. Now if the court had supposed, that in order to give jurisdiction, arrest was necessary, after actual confinement had been dispensed with, they would not have affirmed the validity of proceedings in which the fact of arrest did not appear. The court said, "under the act of 1805, ch. 110, the presentation of a petition by a party in confinement, was alone necessary to give jurisdiction, and since the proof of confinement has been dispensed with by the act of 1830, ch. 130, the jurisdiction of the county courts attaches by the presentation of a petition, such as is prescribed by the acts in relation to insolvent debtors." No form of petition is prescribed by the acts; but the party in his petition must offer to surrender his property, and accompany the same with a list of his creditors, debtors and property, and the courts are authorized to grant discharges on being satisfied of his residence, and at one time, of the assent of his creditors as provided in the acts. We think that the judgment in *Bowie vs. Jones*, can be sustained, only on the supposition that the Court of Appeals considered arrest as well as confinement, to have been dispensed with by the act of 1830. For if arrest was indispensable there was no such proof to bring the application within the jurisdiction of the court; yet the discharge was sustained, as within their jurisdiction.

These acts are to be construed together, with reference to their intent and policy. Their design was to relieve those, who, "by reason of misfortunes, were unable to pay their debts, and were willing to surrender their property for the use of their creditors." 1805, ch. 110. The system has been modified

from time to time, in amelioration of the condition of the debtor class, until, finally, imprisonment for debt has been altogether abolished. With the expediency or policy of such a system of voluntary bankruptcy, we have no concern. It is our duty to expound the law, not to declare what it should be. The legislation of half a century, embracing many acts of Assembly, some of which are not easily comprehended, may be open to either construction when taken in detached portions, but when considered as a whole, we think, it leads to the conclusion that arrest for debt was not necessary, at the adoption of the present constitution, to entitle a person to be discharged under the insolvent laws of the State. The question is not free from difficulty; and in arriving at this conclusion, we have not overlooked the consideration, entitled to much weight in doubtful cases, that by one construction titles acquired under proceedings, where the debtor had not been arrested, may be sustained, whereas by a contrary, interpretation they might be disturbed. *Ram on Judgments,* 9 *Law Lib. ch.* 6 and 14.

Believing that the insolvent laws were not abrogated by the constitution, it follows that the trustee of John B. Snouffer, had a standing i n court to object to the validity of the *fi. fa.* issued on the judgment set out in the record, and that the ruling of the court below must be affirmed.

*Judgment affirmed.*