(Decided 23rd June, 1874.)

---

MICHAEL McALEER *vs.* DANIEL YOUNG, and others.

*Payment and satisfaction of Judgments—Certain acts held not to constitute a Fraudulent intent in procuring the Assignment of a Judgment. The rights and powers of an Assignee of a Judgment as Collateral security, in regard to assigning the same under Art. 9, secs. 1, 2, 3 and 4, of the Code.*

A judgment was recovered against certain joint and several makers of a promissory note. During the progress of the action the note was assigned in writing, and the action was entered to the use of the assignee, who after the judgment was rendered, but on the same day, assigned the judgment, and on the following day an order was filed by the plaintiff's attorney, directing the judgment to be entered for the use of the second assignee. The latter bought the judgment as an accommodation for his uncle, who was one of the defendants in the judgment, and paid for it with money borrowed from Bank, upon a discounted note, signed by all but one of the defendants in the judgment as sureties. The remaining defendant after the date of the judgment, conveyed away certain real estate which was after-

wards taken in execution to satisfy the judgment. On a bill filed by a grantee of the land for an injunction to restrain the execution, it was HELD:

.1st. That payment by the assignee to the assignor of the judgment, was not a payment by the defendants therein, by reason of the note upon which the money to pay for the judgment was procured, being signed by them as sureties; and did not operate to extinguish or satisfy the judgment.

2nd. That the assignee was a stranger to the judgment, under no obligation to pay the debt, and the payment by him to his assignor would not operate as a satisfaction of the judgment, unless such was his manifest intention.

3rd. That it could not operate as a payment because the proof showed an express contract to the contrary.

4th. That the purchase of the judgment by the assignee at the instance of the said defendants, to relieve them from the necessity of paying the judgment, (it appearing that they were only sureties in the original transaction,) and their signing the discounted note to enable him to raise the money with which to make the purchase, and proof that their intention in the transaction was to enforce the judgment against the property of the other defendant in the judgment, who was the principal debtor therein, in order to protect themselves, was no evidence of fraud or injustice on their part in procuring the purchase of the judgment for that purpose.

Where the plaintiff in an action assigns the debt sued on as collateral security for a contingent liability and dies, the judgment ought to be returned among the sperate debts of his estate, with the statement of the manner in which the same had been assigned. Still, until such contingent liability was discharged, the right to the judgment remained in the assignee, with the right to enforce its payment by execution or otherwise, and the right to assign it to any one for value.

Secs. 1, 2, 3, 4 of Art. 9 of the Code, authorize such assignments to be made, not only by the original plaintiff in the judgment, but also by any one who holds as *bona fide* assignee.

APPEAL from the Circuit Court for Frederick County, sitting in Equity.

The facts of this case are fully stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*James McSherry*, for the appellant.

*Wm. A. Fisher*, for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This appeal is from an order dissolving an injunction. The material facts of the case, as disclosed by the pleadings and proof, cannot be more succinctly stated, than in the opinion of the Judge of the Circuit Court, sent up with the record as follows:

"The bill was filed by the appellant on the 20th May, 1870, praying for an injunction, to restrain the execution *of a fieri facias* on a judgment recovered by Jacob M. Kunkel, use of *Ezra Houck, vs. Hugh McAleer and others,* and by said Houck assigned to the said Daniel Young.

"The material allegations of the bill are that on the 31st August, 1867, Hugh McAleer, John A. Smith, Charles Smith, Oscar P. Crampton, Joshua Ahalt and Samuel Ahalt, made their joint and several promissory note for $5000, payable to Jacob M. Kunkel in ninety days. That on the 22nd January, 1870, suit was instituted thereon, against all the parties to the note, that on the 12th February, 1870, the note was by writing transferred to Houck, and on the 5th March, 1870, the suit was entered for his use. That on the 9th May, 1870, judgment was rendered for the plaintiff for $5807.50 and costs; on the same day the judgment was assigned by Houck to Daniel Young; and on the next day, an order was filed by the plaintiff's attorney directing the judgment to be entered for the use of Daniel Young. That on the 24th April, 1871, a writ of *fieri facias* on the judgment was sued out by Young, and a levy made by the sheriff on the property of the complainant alone, by direction of said Young, which property formerly belonged to Hugh McAleer, that the sheriff has advertised the property, and threatens to sell the same. The bill alleges that Young is not a *bona fide*

assignee of the judgment, that Houck was not a *bona fide* assignee of the note; that the right to the same and the judgment thereon passed to the administratrix of Kunkel, who died on the 7th April, 1870.

"That the defendants or some one or more of them confederating with Young for the purpose of perpetrating a fraud upon the process of the Court, advanced the money to Young, wherewith the judgment was procured to be entered for his use; that the threatened sale of the complainant's property, in pursuance of said fraudulent combination is vexatious and inequitable. That the said judgment is not due but has been paid and satisfied, and that it would be inequitable, and a fraud upon the complainant to enforce the same. The defendants were required to answer under oath.

"All the charges of fraud, combination, *mala fides*, want of consideration in the assignment and transfer of the judgment are fully denied in the answers under oath.

"It is admitted by the parties that the land levied on by the sheriff, was the land of Hugh McAleer, and was conveyed to Michael, the complainant, on the 1st August, 1870, about three months after the judgment was rendered."

Certain exceptions to testimony were filed by the complainant in the Circuit Court, which were sustained. We think this ruling was correct, and ought to be affirmed.

The several grounds of relief on which the appellant relies are,

*First.* Because the judgment has been paid and satisfied. "*Second.* Because there is a fraudulent combination by the appellees to pervert the process of the Court into an engine of oppression, and to that end they have induced Young, who has knowingly and willingly consented to be their instrument, to purchase the judgment, and to proceed to collect the same by execution against the property of the appellant; and therefore he is not a *bona fide assignee* of the judgment.

"*Third.* That Young has no title to the judgment, and ought not to be allowed to enforce it."

These will be considered in their order.

*First.* Has the judgment been paid and extinguished?

There is no evidence that the defendants in the judgment or any of them have paid any part of it; Young the assignee was a stranger.

The proof shows that he bought it, as an accommodation for his uncle Samuel Ahalt, one of the defendants in the judgment, and that he paid for it with money borrowed from the bank. The argument on the part of the appellant is, that because his note discounted at the bank, was signed by Samuel Ahalt, Joshua Ahalt, Oscar P. Crampton, Charles Smith and Cornelia V. Smith who were defendants in the judgment, that the payment of the money by Young to Houck was a payment by the defendants, and operated to extinguish or satisfy the judgment. But it is shown by the evidence that they signed the note only as sureties, the money obtained from the bank was the money of Young, placed to his credit, checked out by him and ultimately repaid by him to the bank, with his own money in part borrowed by him from Miss Marshall on his own credit; no part of it was paid by his sureties.

There is no ground for holding that the transaction operated as a payment or satisfaction of the judgment. Young was a stranger, under no obligation to pay the debt, and the payment by him to Houck will not operate as a satisfaction of the judgment unless such was his manifest intention. *Walker vs. Stone,* 20 *Md.,* 195. It could not operate as payment when there was an express contract to the contrary as shown by the proof.

The next question is as to the alleged fraudulent combination.

It appears from the evidence that at the time the judgment was purchased by Young, Houck the assignee was insisting upon its payment, and to relieve the defendants

from being pressed at the time for the money, and especially for the accommodation and relief of his uncle Samuel Ahalt, Young consented to raise the money and purchase the judgment. To enable him to do so, the other defendants became his sureties on his note at the bank. The evidence further shows that their purpose was to enforce the payment of the judgment against the property of Hugh McAleer, who was, as maintained by the other defendants, the principal debtor, while they were merely his sureties. That such was the relation between McAleer and the other defendants, we think is satisfactorily established.

We have carefully examined the evidence, and have reached the same conclusion as the Judge of the Circuit Court, that "Hugh McAleer was the principal debtor upon the note, and judgment, and as between him and his co-defendants, first liable to pay."

That being so, it is very clear that there was no fraud or injustice in the other defendants procuring Young to purchase the judgment, and to proceed to enforce the same by execution against the property of McAleer.

*Third.* There is no evidence to impeach the *bona fides* of the assignments from Kunkel to Houck, and from Houck to Young; or any good ground of objection to Young's title, and right to enforce the judgment by execution.

As to the assignment by Kunkel to Houck, it appears that the latter had become surety for the former, upon a note to the bank in Frederick, and for the purpose of indemnifying him, the assignment of the judgment, was made by Kunkel as collateral security.

Thus holding it, subject to the ultimate right of Kunkel, after the payment of the note for which it had been pledged, it was proper that it should be returned among the sperate debts due Kunkel's estate; accompanied with the statement that the same had been assigned to Houck as collateral security to pay the note of Kunkel held by the bank. Still, until that note was paid, the right to the judg-

ment remained in Houck, with the right to enforce its payment by execution or otherwise; and the right to assign it to any one for value. *Code, Art.* 9, *secs.* 1, 2, 3, 4. These sections, in our judgment, authorize such assignments to be made, not only by the original plaintiff in the judgment; but also by any one who holds as *bona fide* assignee; who as such, is entitled to the judgment, with power to control it, and issue execution in his own name. It would be unreasonable to construe the Code as restricting the right of making such assignments to the legal plaintiff in the judgment. That construction was declared to be too narrow in *Spiker vs. Nydegger,* 30 *Md.,* 321. We refer also to *Trail vs. Snouffer,* 6 *Md.,* 308. In this case it appears that the money obtained by Houck from the sale of the judgment to Young, was applied to the payment of the note of Kunkel, for which the judgment was held by Houck as collateral security.

Upon the whole case we conclude that the appellant is not entitled to relief, and that the order of the Circuit Court dissolving the injunction ought to be affirmed. As the case has been fully argued on its merits, we have preferred to express our opinion upon the several questions presented by the record, without resting our decision upon the objection made by the appellees; that in respect to the matters alleged in the bill, even if they were true, the appellant would be entitled to relief at law, upon motion to quash the execution; as was decided in *Trail vs. Snouffer,* 6 *Md.,* 315.

We think even if the jurisdiction of a Court of Equity be conceded, the decision below is right upon the merits of the case.

*Order affirmed.*

(Decided 23rd June, 1874.)