## ORPHANS' COURT OF BALTIMORE CITY.

Filed April 20, 1899.

IN THE MATTER OF THE ESTATE OF EDWIN WALTERS, DECEASED.

*Wm. H. Brune* for Equitable National Bank.

*Frank Gosnell* for Thomas M. Lanahan, executor.

Argued before WRIGHT, C. J., NAAS AND RIEHL, JJ.

WRIGHT, C. J.—

The questions in this case are raised by a series of petitions filed by the National Equitable Bank of Baltimore against Thomas M. Lanahan, executor of Edwin Walters, deceased, and by exceptions to the answers and first administration account of the executor. Some of these questions are preliminary in their order and character, but by consent of parties all were heard together, at one and the same time.

The bank is a creditor of the estate. Its claim of $3000 was proved and passed by this court. Its first charge for complaint is that the executor has failed to return a list of debts due the estate, as required by law, and later alleges that the decedent, in his life time, traded as "E. Walters & Co.," and at the time of his death was president of the Orient Distilling Company, and about August 1st, 1892, transferred to the latter the distillery and warehouse property of the former, and received therefor $50,000 in the coupon bonds and most of the shares of the capital stock issued by the corporation, and that there was in bond, in said warehouses, a quantity of distilled spirits belonging to the decedent, as well as that belonging to other parties, upon which storage was charged, due and collected, belonging to the estate, and not returned or accounted for to this court, and by another petition the bank charges the failure of the executor to return within, three months, certain cash ($1878.84), on deposit in the National Marine Bank, and $19.05 in the Western National Bank, and makes certain other allegations of failure of the executor to perform his duty as such, which are mainly set forth in previous petitions filed, and that by reason of the irreconcilable conflict between his duties as executor and as agent, manager or owner of the distillery property and as creditor of the estate he is not a suitable person to administer the estate, and asks for the revocation of his letters.

The executor admits that the corporation had on storage certain quantities of distilled spirits belonging to deceased and others; that deceased, as its president, had collected a large amount for storage of spirits or whiskies in the warehouses of the corporation, but says he had appropriated the same to his own use, and that the money which by this and other unlawful means he had obtained was far in excess of the value of the whiskey belonging to decedent, and that it and the proceeds of the portion of it that was sold were not inventoried or returned because the corporation made claim to the same and to "all other monies which have or may become due on any whiskies deposited in the warehouses prior to August 1, 1892." That the cash in the National Marine Bank, while not returned in an inventory, it has been otherwise accounted for in a report made to this court, and has been duly distributed, as has also the $19.05 in the Western National Bank. He explains and gives the reasons for his delay in returning the list of debts, as well also for not returning an inventory of the $25,000 of the Orient Distilling Company's bonds, which had been pledged to secure a debt of $16,507.12, and likewise for the delay in returning an inventory of the 1,746 shares of stock.

And, first, we may say that the answers of the defendant which were excepted to by the petitioner seem to have been fairly responsive to the allegations of the petition, and without material evasion or equivocation, and we think the exceptions thereto should be overruled.

We are of the opinion that the executor has satisfactorily explained his delay in returning a list of debts due the estate, and as well his delay in returning an inventory of the shares of stock of the Orient Distilling Company, and that the money in the National Marine Bank and the Western National Bank, while it was not in form returned in an inventory, was brought into the first administration account and distributed, we think, gratifies the intention and spirit of the law, and surely it has wrought no injury to the interests of creditors or the estate by making a return of such monies in this manner.

It has been urged by counsel for petitioner, with much force and ability, that the executor should have returned an inventory of the coupon bonds of the Orient Distilling Company ($25,000

in amount), which had been pledged to him individually for a loan made by him to the testator in his lifetime. The debt for which this pledge was made has never been fully discharged, and a balance of several thousand dollars is still due thereon to Mr. Lanahan.

Whatever the practice as to the return of an inventory in cases like this may have been (and as we believe it has not been altogether uniform), we are of the opinion that the views of the petitioner's counsel, as announced in argument, are not sustained by the weight of authority. If the executor, as such, has no power "to take into his possession a specified chattel, he is not answerable for it." Hinkley's Testamentary Law, Sec. 858; Hignutt vs. Cranor, 62 Md., 220; 2 Woerner Am. Law of Administration, page 666.

As executor, he has no power to take possession of a mortgaged chattel until the debt for which it was hypothecated has been paid; "accordingly, it has been decided that chattels, whether real or personal, mortgaged or pledged by the testator, and *redeemed* by the executor, shall be assets in the hands of the executor for so much as they are worth beyond the sum *paid* for their *redemption*." 2 Williams on Executors (5 Am. Ed.), 1499-1500. To the same effect is the case of McAleer vs. Young, 40 Md., 444. The same view is taken in Glaholm vs. Rountree, 6 Ad. & Ell., 710, a case very similar to the one now before us.

In enumerating what are assets, 2 Woerner, page 648, sec. 307, the author further adds: "As well as such chattels which the decedent had mortgaged or pledged, and which the executor or administrator *redeemed*."

In the light of the abundant authorities found, it cannot be reasonably doubted, we think, that the duty of an executor to inventory a pledged chattel becomes imperative only upon its redemption.

The main controversy in this case has arisen over the right and title to the whiskies aforesaid, in warehouse, the proceeds of that portion sold, and the monies claimed by way of set-off for monies said to have been illegally collected and withheld by Walters. The corporation lays claim to this property and this money, and the executor maintains that he should not and

cannot return it or bring it into the estate for payment and distribution. while it is claimed by and in the possession of the corporation.

The petitioner, on the other hand, contends that Walters owned all the stock of the corporation, and was, or as E. Walter & Co., was practically the Orient Distilling Company, and, therefore, his interests in the corporation are assets of the estate, and no such claim as is set up by the corporation can be recognized to affect their status.

Whatever may be the facts of the relation of Walters, or E. Walters & Co., to the Orient Distilling Company, we must not and cannot lose sight of the fact that they were in law distinct entities or beings—the corporation and the person are two, not one; and such being the case, and the corporation in its present attitude, not being in any way amenable to this court, we are without jurisdiction to inquire into or to pass upon its affairs.

To require the executor to apply the proceeds of sale of the whiskies, the storage collected, or the other property or monies now claimed by the corporation, to the payment of the debts of the testator and distribute the balance before such claim and the claims of the corporation creditors, as well also government taxes, shall have been adjusted or settled, would be to subject the executor to the liability of loss or double payment, since it is alleged that the Orient Distilling Company is insolvent, which, if true, gives the creditors of the latter "priority of payment out of the assets of the corporation." Pott & Co. vs. Schmucker, 84 Md. 535-554, 555, 556. Moreover, by reason of a distinct claim and title to the property and money aforesaid having been set up by the corporation, we are of the opinion that it is a matter for adjudication in another forum, and that it is not within the jurisdiction of this court to take cognizance of the same. "The Orphans' Court of the State exercises only a special, limited jurisdiction, which they cannot transcend, and within a just and reasonable construction of its statutory powers, we do not find anywhere that it is clothed with jurisdiction to try questions of title to personalty." Daugherty vs. Daugherty, 82 Md. 232, and cases there cited. See also Gibson vs. Cook, 62 Md. 256.

If, however, hereafter by appropriate proceedings in another tribunal, it shall be determined that the money and property in question and which at present are held or claimed by the Orient Distilling Company, or any part thereof, belongs to the estate of Edwin Walters, then, as a matter of course, it becomes the duty of the executor to account for it as such to this court.

We might properly add in this connection, that this entire matter of the dual relation of Edward Walters and Company and the Orient Distilling Company, or Mr. Lanahan, as its successor, and these mooted claims between them, and between them and the estate, appear to have been somewhat in review in an equity proceeding in the Circuit Court for Baltimore county, where they were made the subject of inquiry with a result that, in our opinion, makes it unnecessary for us to refer to them further or in detail here.

The point is made by petitioner, that the deed which transferred the distillery and other property of Walters to the Orient Distilling Company, did not, by its terms and provisions, convey to the latter the storage accrued or accruing on the whiskies in the Walter's warehouses, and that all the storage that had accrued on spirits that were bonded prior to the first day of August 1892, (when said deed was made) was the individual property of Walters, and now forms part of his estate. On the other hand, as we understand, it is maintained that in point of fact no such storage as claimed was received by the executor, and the latter, in his answer, denies the allegation and puts the petitioner to full proof, of the same.

No evidence has been submitted to establish that such was the fact, and as the answer is under oath, the statements it contains are to be taken as true. The same may be said as to all the pleadings in the case, and alike held applicable to and determinative of this case. None of the petitions filed are under oath and in fact are not required to be. But all the answers filed are under oath. "Whereas a case is submitted to the Orphans' Court on petition and answer under oath, no testimony being taken by either party, the allegations of the answer are taken to be true." Barroll's administra-

tors vs. Peters, 20 Md. 178; Daugherty vs. Daugherty, 82 Md. 229.

We come now to the matter of the bank's exception to the first administration account passed by the executor. It is alleged and admitted that there was an error in failing to credit on the claim of the executor the sum of $9,030.17, being one-half of the net proceeds of sale of the Orient Distilling Company property, shown by the copy of the auditors' account filed as an exhibit. This sum of $9,030.17, as appears by petition and agreement filed June 23, 1898, the executor avers he has in hand ready to distribute, and that this credit shall appear in a subsequent account, and which the court will require either he shall do or that the former account be in that particular corrected.

The bank further excepts to the allowance of certain claims included in the account, and calls for full proof of the same. These claims objected to, as we understand, were regularly passed by the court, which warranted and protected the executor in paying them, while it was his right and duty, if he did not think them valid claims, to require the creditor in such cases to first establish his claim by law, and this the executor, it seems, has done as to some of such claims. Suits for that purpose are now pending. We do not think, however, that the exceptant can call the executor to prove, nor can the latter be required to make full proof of the claims of creditors, which have been regularly and properly passed by this court. "The allowance of the claim is *prima facie* evidence of its correctness, and the executor or administrator need offer no further evidence to sustain it. The *onus probandi* is shifted from the executor or administrator to the creditor." Bowling vs. Lamar, 1 Gill, 364; Stevenson vs. Schriver, 9 G. & J., 336.

As to the objection made to the commissions which were allowed the executor, the court is of the opinion that, taking into consideration the labor attending the administration of this estate, with the somewhat mixed and complex condition in which the affairs of the testator seem to have been involved, the rate of commissions allowed was not excessive.

And finally, it is urged that there is such an irreconcilable conflict of duty

and interest affecting the executor, from the attitude in which he is placed, that he is thereby rendered unsuitable and disqualified to impartially administer this estate.

There need not be, necessarily, an irreconcilability or conflict of interest in the position of an executor who sustains individually other relations to the estate, such as debtor or creditor, that may render the duties incompatible with his private interests, or render him incompetent to honestly discharge his duties as a representative of the estate. The fact that a party is indebted to the estate does not disqualify him to act as administrator, if otherwise entitled. Kearney vs. Turner, 28 Md. 408; Ehlen vs. Ehlen, 64 Md. 364. As a creditor, he is in certain cases, by express provision of law, entitled to letters. Code, Art. 93, sec. 30. Neither could the fact that he is the agent or attorney of a corporation in which the testator in his lifetime was the one most largely interested of itself constitute a barrier to the efficient performance of his duties as executor of such deceased. All that would seem to be required by the law and in good conscience is, that in administering the estate he shall act intelligently, faithfully and honestly, with a due regard for the best interests of the estate committed to his charge consistent with a prudent respect for the rights of all others having or claiming an interest therein. And with this standard of principle—this rule of action—before us, while carefully examining the facts of this case, we have not been able to find from them such evidence as would show the executor to be an unsuitable person to administer the estate, or that there has been such dereliction of duty on the part of this executor, in the want of attention or faithfulness as such to the interests of the estate, or otherwise, as to warrant a revocation of his letters.

It is, therefore, ordered that the said exceptions to the answers and administration account be, and the same are hereby overruled. And that the various petitions (excepting that filed October 6th, 1898, which is reserved for future consideration) be, and the same are hereby dismissed.

It is further ordered that the executor, in his next administration account, properly account for the sum of $9,030.17, erroneously credited in his first administration account. And that the costs be paid by the estate.